STATE, Appellant, v. MUELLER, Respondent.

*No. State 54. Argued October 1, 1969.—Decided October 28, 1969.*
(Also reported in 171 N. W. 2d 414.)

388

For the appellant the cause was argued by *Sverre O. Tinglum,* assistant attorney general, with whom on the

brief were *Robert W. Warren,* attorney general, *William A. Platz,* assistant attorney general, and *James C. Boll,* district attorney of Dane county.

For the respondent there was a brief and oral argument by *James H. McDermott,* state public defender.

A brief *amicus curiae* was filed by *Joseph M. Syman,* family court commissioner in and for Milwaukee county, *Ernest T. C. Hanson,* family court commissioner in and for Eau Claire county, and *Fred W. Fisler,* family court commissioner in and for Brown county, for the Wisconsin Family Court Commissioners Association.

BEILFUSS, J. Can the state of Wisconsin constitutionally subject its residents to criminal sanctions for failure to comply with a statutory requirement that they obtain court permission to remarry before contracting a marriage outside Wisconsin when they are obligated by a Wisconsin court order to pay support for minor issue of a prior marriage? In our opinion the question must be answered affirmatively.

The statutes here being challenged are sec. 245.10, requiring permission to remarry when under a support order, and sec. 245.30 (1) (f), providing a felony penalty for violation of sec. 245.10:

"245.10 **Permission of court required for certain marriages.** (1) No Wisconsin resident having minor issue of a prior marriage not in his custody and which he is under obligation to support by any court order or judgment, may marry in this state or elsewhere, without the order of either the court of this state which granted such judgment or support order, or the court having divorce jurisdiction in the county of this state where such minor issue resides or where the marriage license application is made. No marriage license shall be issued to any such person except upon court order. The court, within 5 days after such permission is sought by verified petition in a special proceeding, shall direct a court hearing to be held in the matter to allow said person to submit proof of his compliance with such prior court obligation. . . . Upon

the hearing, if said person submits such proof and makes a showing that such children are not and are not likely to become public charges, the court shall grant such order, a copy of which shall be filed in any prior divorce action of such person in this state affected thereby; otherwise permission for a license shall be withheld until such proof is submitted and such showing is made, but any court order withholding such permission is an appealable order. . . .

"(2) . . .

"(3) If a Wisconsin resident having such support obligations of a minor, as stated in sub. (1), wishes to marry in another state, he must, prior to such marriage, obtain permission of the court under sub. (1), except that in a hearing ordered or held by the court, the other party to the proposed marriage, if domiciled in another state, need not be present at the hearing. . . .

"(4) This section shall have extraterritorial effect outside the state; and s. 245.04 (1) and (2) are applicable hereto. Any marriage contracted without compliance with this section, where such compliance is required, shall be void, whether entered into in this state or elsewhere."

"245.30 **Penalties.** (1) The following shall be fined not less than $200 nor more than $1,000, or imprisoned not more than one year, or both:

" . . .

"(f) *Penalty for marriage contracted without required permission of court.* Any person who obtains a marriage license contrary to or in violation of s. 245.10, whether such license is obtained by misrepresentation or otherwise, or whether such marriage is entered into in this state or elsewhere."

The challenge to the statutory enactment is that it is unconstitutional because of its extraterritorial effect. There is no claim here that the statutes violate any specific provision of the United States Constitution or the Wisconsin Constitution, only that Wisconsin cannot constitutionally regulate or punish for acts done outside its territorial boundaries.

The general rule, unquestionably, is that laws of a state have no extraterritorial effect; equally well settled

is the qualification that there are exceptions to the general rule.

The leading case of *People v. Tyler* (1859), 7 Mich. 161, 221, recognized this concept as follows:

"It is well settled, as a general principle, that the laws of no nation have any extraterritorial force—that criminal laws especially can not operate beyond the territorial limits of the government by which they are enacted. From this principle mainly, but not entirely, results another general principle, that, to give any government or its judicial tribunals the right to punish any act or transaction as a crime, the act must have been committed, or the transaction must have occurred within its territorial limits. Hence, by the common law, which in this respect, has always been acted upon in the United States, criminal offenses are considered as entirely local.—*Story Confl. Laws*, sec. 620. But the general principle, that the laws of a country can not render an act criminal when committed beyond its limits, is subject to some qualifications or exceptions. Thus, every sovereignty has the right, subject to certain restrictions, to protect itself from, and to punish as crimes, certain acts which are peculiarly injurious to its rights or interests, or those of its citizens, *wherever committed;* at least, if committed by a citizen or subject of such sovereignty; and *unless* calculated to injure the sovereignty or its citizens, no government can have any legitimate right to punish offenses committed within or without its limits."

An early Wisconsin case, *State ex rel. Chandler v. Main* (1863), 16 Wis. 422 (*398), 436 (*412, *413), 443, 444 (*419, *420), expresses the same principles as follows:

". . . But even assuming this, the counsel for the relator still contends that an implied prohibition should be derived from the nature and scope of the constitution itself, and the general principle that the constitution and laws of a country can have no force beyond its territorial limits. This is undoubtedly a well established general principle, applicable to all governments. And if this prin-

ciple is applicable to the law in question, and the latter cannot be brought within any of the recognized qualifications of the former, the act must fail. Thus, if the legislature of this state should pass a law imposing duties upon the citizens of Illinois, it would be void, and it would be so, although there is no clause in our constitution prohibiting the passage of such a law. It would be void by reason of the general principle referred to, and because it would be outside of the scope of the legislative power of this state. It might be said to be unconstitutional, although not prohibited, for the reason that the constitution delegated to the legislature only such legislative power as might exist in this state. Therefore, an act legislating for Illinois would be outside of the limits of that power, and might be said to be unconstitutional, just as it has been said that a law attempting to take the property of one man and give it to another was unconstitutional, though not prohibited, because such an act was not within the scope of the legislative power.

"But this principle has certain well defined and universally recognized qualifications. And although it is true as a general proposition, that the laws of a state have no force outside of its territorial limits, it is equally true that every state may, in the regulation of its own internal affairs, authorize certain acts to be done outside of its limits, and describe what effect they shall have within them. . . .

". . .

"If it could be held that the provision for the punishment of illegal voting was invalid, it would present a very serious question whether this principle was not applicable to this law. But we are not prepared to say that that provision is invalid. On the contrary, it seems to be well established, that every nation has the right to punish its own citizens for the violation of its laws wherever committed. This right is based upon the duty of allegiance, and it does not rest upon the assumption that one state can extend its laws into another, so as to make them directly operative there, or impose any obligation on such other state to observe them or give any effect to them; but merely that they may be personally binding upon the citizen of the state which enacts them, and justify his

punishment for their violation by such state when he returns within its limits."

In the recent case of *Estate of Ferguson* (1964), 25 Wis. 2d 75, 130 N. W. 2d 300, it was held that sec. 245.10, Stats., as it then existed, did not have extraterritorial effect so as to invalidate a marriage of a Wisconsin resident performed in Michigan. But the opinion stated, at page 80:

"We do not hold that the public policy expressed in sec. 245.10 cannot be protected or promoted by the nonrecognition of the validity of foreign marriages entered into by Wisconsin residents. We merely hold the present language of sec. 245.10 does not accomplish that purpose."

The statute was amended in response to this statement by the 1965 legislature and now appears as set forth in the forepart of this opinion.

The significant changes are that prior to the amendment, sec. 245.10, Stats., provided, "When either applicant [for a marriage license] has minor issue of a prior marriage not in his custody and which he is under obligation to support by court order or judgment, no license shall be issued without the order of a court having divorce jurisdiction in the county of application." As amended it provides: "No Wisconsin resident having minor issue of a prior marriage not in his custody and which he is under obligation to support . . . may marry in this state or elsewhere, without an order of either the court of this state which granted such judgment [of divorce] or support order, or the court having divorce jurisdiction in the county of this state where such minor issue resides or where the marriage license application is made."

Prior to the amendment the statute did not restrict its application to residents of Wisconsin and also made it obligatory to obtain the permission of the court in the county where application for a marriage license was made. This requirement imposed a duty upon courts be-

yond Wisconsin's territorial boundaries and was held to be of no effect. The present statute provides for an order of a court of this state. Further, subs. (3) and (4) of sec. 245.10, Stats., clearly state legislative intention and provide that sub. (1) shall have extraterritorial effect.

We are of the opinion that sec. 245.10, Stats., and the penalty section, 245.30 (1) (f), are valid legislative acts. Only the conduct of Wisconsin residents can be punished; the interest Wisconsin seeks to protect is a legitimate and substantial protectible interest of this state both as to the protection of the welfare of its minors and the marriage relationship of its residents; it does not call for enforcement nor impose duties upon any foreign state; it does not violate due process because it applies to only residents of this state; and the statutory permission to marry, and the enforcement of the statute is in the courts of this state, and it is not repugnant to the laws of another state.

In determining whether a given legislative enactment can have extraterritorial effect, we believe the legitimate protectible interests of the state should be balanced against inconvenience to the accused and invasion, if any, upon the sovereignty of sister states. In balancing these interests as applied to the statutes in question we believe the legitimate interests of the state of Wisconsin clearly preponderate and the statute should be upheld as a legitimate exercise of legislative power.[1]

*By the Court.*—Order reversed, and remanded for further proceedings.

WILKIE, J., took no part.

[1] For comparable concept in civil cases *see Wilcox v. Wilcox* (1965), 26 Wis. 2d 617, 133 N. W. 2d 408.