Roger G. REDHAIL et al., Plaintiffs,

v.

Thomas E. ZABLOCKI et al., Defendants.

Civ. A. No. 74–C–624.

United States District Court,
E. D. Wisconsin.

Aug. 31, 1976.

Georgia Lutze, Patricia Nelson and Robert H. Blondis, Milwaukee Legal Services, Inc., Milwaukee, Wis., for plaintiffs.

Robert P. Russell, Corp. Counsel, and David J. Siler, Asst. Corp. Counsel, Milwaukee, Wis., for defendants.

Before TONE, Circuit Judge, and REYNOLDS and WARREN, District Judges.

REYNOLDS, District Judge.

This is a class action challenging the constitutionality of a Wisconsin statute, § 245.-10(1), (4), and (5) (1973),[1] which requires certain residents to obtain court permission before they can marry. The action is brought pursuant to 42 U.S.C. § 1983, and

---

1. "245.10 Permission of court required for certain marriages (1) No Wisconsin resident having minor issue not in his custody and which he is under obligation to support by any court order or judgment, may marry in this state or elsewhere, without the order of either the court of this state which granted such judgment or support order, or the court having divorce jurisdiction in the county of this state where such minor issue resides or where the marriage license application is made. No marriage license shall be issued to any such person except upon court order. The court, within 5 days after such permission is sought by verified petition in a special proceeding, shall direct a court hearing to be held in the matter to allow said person to submit proof of his compliance with such prior court obligation. No such or-

jurisdiction is conferred by 28 U.S.C. § 1343(3). *Lynch v. Household Finance Corp.,* 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 822 (1972). The statute is attacked on the grounds that it conflicts with rights secured by the First, Fifth, Ninth, and Fourteenth Amendments to the United States Constitution. The relief sought includes a declaratory judgment that the statute is unconstitutional as well as an injunction restraining its enforcement. We hold that the statute violates the Fourteenth Amendment's equal protection clause and that the relief requested should be granted.

I.

In January of 1972, a paternity action was commenced in the County Court, Civil Division, of Milwaukee County, Wisconsin, against plaintiff Roger G. Redhail in which it was alleged that he was the father of a baby girl born out of wedlock on July 5, 1971. On February 23, 1972, Redhail appeared and admitted that he was the father of the child. On May 12, 1972, Redhail was adjudged the father of the child born on July 5, 1971, and was ordered to pay $109 per month as support for the child until she reached eighteen years of age, and was also ordered to pay court costs.

At the time of his admission of paternity, Redhail was a minor and a high school student. From May of 1972 until August of 1974, he was unemployed, indigent, and unable to pay any support obligation. No payments were, therefore, made, and as of December 24, 1974, there was an arrearage in excess of $3,732.

Redhail's child has been a public charge since her birth and is currently receiving benefits under the Aid to Families with Dependent Children ("AFDC") program in excess of $109 per month. Thus, the child would be a public charge even if Redhail were current in the payment of support ordered in the paternity action.

On September 27, 1974, Redhail filed an application for a marriage license with de-

der shall be granted, or hearing held, unless both parties to the intended marriage appear, and unless the person, agency, institution, welfare department or other entity having the legal or actual custody of such minor issue is given notice of such proceeding by personal service of a copy of the petition at least 5 days prior to the hearing, except that such appearance or notice may be waived by the court upon good cause shown, and, if the minor issue were of a prior marriage, unless a 5-day notice thereof is given to the family court commissioner of the county where such permission is sought, who shall attend such hearing, and to the family court commissioner of the court which granted such divorce judgment. If the divorce judgment was granted in a foreign court, service shall be made on the clerk of that court. Upon the hearing, if said person submits such proof and makes a showing that such children are not then and are not likely thereafter to become public charges, the court shall grant such order, a copy of which shall be filed in any prior proceeding under s. 52.37 or divorce action of such person in this state affected thereby; otherwise permission for a license shall be withheld until such proof is submitted and such showing is made, but any court order withholding such permission is an appealable order. Any hearing under this section may be waived by the court if the court is satisfied from an examination of the court records in the case and the family support records in the office of the clerk of court as well as from disclosure by said person of his financial resources that the latter has complied with prior court orders or judgments affecting his minor children, and also has shown that such children are not then and are not likely thereafter to become public charges. No county clerk in this state shall issue such license to any person required to comply with this section unless a certified copy of a court order permitting such marriage is filed with said county clerk.

\* \* \* \* \* \*

"(4) If a Wisconsin resident having such support obligations of a minor, as stated in sub. (1), wishes to marry in another state, he must, prior to such marriage, obtain permission of the court under sub. (1), except that in a hearing ordered or held by the court, the other party to the proposed marriage, if domiciled in another state, need not be present at the hearing. If such other party is not present at the hearing, the judge shall within 5 days send a copy of the order of permission to marry, stating the obligations of support, to such party not present.

"(5) This section shall have extraterritorial effect outside the state; and s. 245.04(1) and (2) are applicable hereto. Any marriage contracted without compliance with this section, where such compliance is required, shall be void, whether entered into in this state or elsewhere.

\* \* \* \* \* \*"

fendant Thomas E. Zablocki. Zablocki is the County Clerk of Milwaukee County and is responsible for the issuance of marriage licenses in Milwaukee County pursuant to § 245.05, Wis.Stats. On September 30, 1974, an agent of Zablocki denied Redhail's application for a marriage license and refused to issue a marriage license solely because Redhail failed to comply with § 245.-10(1), Wis.Stats., in that he did not have a court order granting him permission to marry.

The complaint in this action was filed on December 24, 1974. Since a permanent injunction restraining the enforcement of a state statute was requested, the action was one requiring a three-judge district court, 28 U.S.C. § 2281. Designation of a three-judge court was requested, and on January 6, 1975, the Chief Judge of the Seventh Circuit entered an order designating this three-judge court pursuant to 28 U.S.C. § 2284. Defendant subsequently filed his answer. Notice was given to the governor and the attorney general pursuant to 28 U.S.C. § 2284(2).

On February 18, 1975, plaintiff filed a motion for a class action. The motion sought to have the action maintained as a class action on behalf of all Wisconsin residents subject to the provisions of § 245.-10(1) and against a class consisting of all the county clerks within Wisconsin. By order dated February 20, 1975, Judge Reynolds ordered that the action proceed as a class action pursuant to Rule 23(b)(2), Federal Rules of Civil Procedure, on behalf of a class of plaintiffs defined as follows:

"All Wisconsin residents who have minor issue not in their custody and who are under an obligation to support such minor issue by any court order or judgment and to whom the county clerk has refused to issue a marriage license without a court order, pursuant to § 245.10(1), Wis.Stats. (1971)."

The order also established a briefing schedule in the event plaintiffs desired to maintain the action against a class consisting of all the county clerks. While plaintiffs filed a brief in support of the motion, defendant Zablocki has never filed a brief in opposition.

Following the filing of a stipulation of facts and briefs, oral argument was held on June 23, 1975, in which a representative from the Wisconsin attorney general's office participated. The Court requested the parties to discuss the applicability of *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), and plaintiffs later filed a memorandum on this issue.

## II.

Before reaching the merits, it is necessary to discuss the *Huffman* issue as well as to decide whether the action should be maintained against a class of defendants consisting of all the county clerks in the State of Wisconsin.

## A.

In *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), the Court held that federal courts must refrain from granting injunctions which would interfere with pending state criminal proceedings in the absence of extraordinary circumstances such as when there is a showing of "bad faith" or "harassment" by the state officials responsible for the prosecution, supra at 54, 91 S.Ct. 746, or where the state law to be applied is " 'flagrantly and patently violative of express constitutional prohibitions,' " supra at 53, 91 S.Ct. at 755. In a companion case, *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971), the same abstention doctrine was held to apply to granting declaratory judgments.[2]

*Huffman v. Pursue, Ltd.,* supra, extended *Younger* to a situation where the state court action, although nominally civil rather

**2.** Companion cases to *Younger* and *Samuels* were: *Boyle v. Landry,* 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); *Perez v. Ledesma,* 401 U.S. 82, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971); *Dyson v. Stein,* 401 U.S. 200, 91 S.Ct. 769, 27 L.Ed.2d 781 (1971); *Byrne v. Karalexis,* 401 U.S. 216, 91 S.Ct. 777, 27 L.Ed.2d 792 (1971).

than criminal, was "in important respects * * * more akin to a criminal prosecution than are most civil cases. The State is a party * * * and the proceeding is both in aid of and closely related to criminal statutes which prohibit the dissemination of obscene materials. * * *" Supra 420 U.S. at 604, 95 S.Ct. at 1208. *Huffman* also held that the federal plaintiff who has lost at the state court trial "must exhaust his state appellate remedies before seeking relief in the District Court, unless he can bring himself within one of the exceptions specified in *Younger*." Supra 420 U.S. at 608, 95 S.Ct. at 1210. The Court did not, however, decide whether *Younger* applies to *any* type of state court proceeding. Supra at 607, 95 S.Ct. at 1200.

■ In the circumstances of this action, it is unnecessary to decide whether *Younger* should be further extended. Plaintiff Redhail did not petition a state court for permission to marry under the provisions of § 245.10(1) after he was denied a marriage license. There is, therefore, no pending state proceeding which would be frustrated by granting the relief requested. In the absence of a pending state criminal prosecution, both declaratory judgments and injunctions may be issued. *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). Thus, even assuming that *Younger* should be held to apply to any type of state court proceeding, since plaintiff Redhail never initiated a proceeding under § 245.10(1), there is no threat to the "principle underlying *Younger* and *Samuels* * * * that state courts are fully competent to adjudicate constitutional claims * * * ." *Doran v. Salem Inn, Inc.*, supra, at 930, 95 S.Ct. at 2567.

■ Nor is there any requirement that a federal plaintiff in an action under 42 U.S.C. § 1983, such as Redhail, first apply to state courts for relief. *Monroe v. Pape*, 365

U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), established the principle that exhaustion of state remedies is not a prerequisite to commencing a § 1983 action. See also, *Wilwording v. Swenson*, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); *McNeese v. Board of Education*, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963).

There is, therefore, no barrier to consideration of plaintiffs' claims on the merits even if the principles of *Younger* and *Huffman* are held to apply to any state court proceeding.[3]

## B.

Plaintiffs seek to have this action maintained as a class action as to defendants under Rule 23(b)(2) of the Federal Rules of Civil Procedure. The defendant class is defined in the complaint as "all county clerks of counties within the State of Wisconsin, all of whom are required by § 245.10(1) Wis.Stats. (1971) to refuse to issue marriage licenses to members of the class of plaintiffs without a court order." As stated above, defendant Zablocki has not filed a brief indicating why this action should not be allowed to proceed against a class of defendants.

Rule 23(a) prescribes the essential prerequisites that must be satisfied for any class action. They are satisfied here. First, the class of defendants, consisting of the seventy-two county clerks in Wisconsin, is "so numerous that joinder of all members is impracticable." Rule 23(a)(1). Next, there is a question of law common to all the members of the class—the constitutionality of the challenged statute. Thirdly, the claims and defenses of the representative party, defendant Zablocki, are "typical of the claims or defenses of the class," Rule 23(a)(3), since Zablocki's contention that his action in refusing a marriage license to Redhail was justified by the statute would undoubtedly be asserted by the other county clerks. Finally, defendant Zablocki is a

---

**3.** There may be members of the plaintiff class who have applied to state courts for permission to marry and whose petitions may be said to be "pending" in those courts. But since the relief requested is prospective in nature and operates against county clerks rather than judges, granting the plaintiff class relief will not occasion "interference" with state court proceedings.

representative party who "will fairly and adequately protect the interests of the class," Rule 23(a)(4). Not only is defendant Zablocki's interest identical to that of the other county clerks, but the attorney representing him is from the Milwaukee County Corporation Counsel's office which is experienced in conducting federal litigation. Furthermore, the Attorney General of Wisconsin has taken an active part in this action, urging that the challenged statute be upheld.

Besides fulfilling the prerequisites of Rule 23(a), a class action must fit within one of the three types of class actions established by Rule 23(b). Plaintiffs seek to have the action proceed under Rule 23(b)(2):

"[T]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; * * * ."

A Rule 23(b)(2) class action is particularly appropriate in civil rights cases, although the rule is not so limited. 3B Moore's Federal Practice ¶ 23.40, at 23–651 —23–654 (2d ed. 1974); C. Wright, Law of Federal Courts, § 72, at 312 (2d ed. 1970); Advisory Committee's Note to 1966 Amendment, 39 F.R.D. 102 (1966). While the language of Rule 23(b)(2) does not expressly provide for its use where declaratory or injunctive relief is sought against a class, such class actions have been ordered. *Danforth v. Christian,* 351 F.Supp. 287 (W.D. Mo.1972); *Rakes v. Coleman,* 318 F.Supp. 181 (E.D.Va.1970); *Washington v. Lee,* 263 F.Supp. 327 (M.D.Ala.1966), aff'd *sub nom. Lee v. Washington,* 390 U.S. 333, 88 S.Ct. 994, 19 L.Ed.2d 1212 (1968). See, 3B Moore's Federal Practice ¶ 23.40, 1974 Supplement, at 86. Where, as here, a statute with statewide application is challenged on the ground of its unconstitutionality, allowing the action to proceed against the class of officials charged with its enforcement is in accordance with the interests of judicial administration and justice which Rule 23 is meant to further.

At oral argument, it was pointed out that the members of the defendant class of county clerks have never been given notice of the pendency of this action. Indeed, no notice, either individual or otherwise, has been directed at the members of the plaintiff class. Rule 23 itself does not require notice to the members of a (b)(2) class, since the mandatory notice provisions of Rule 23(c)(2) are by their terms inapplicable, *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177 n. 14, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), and the notice provision of Rule 23(d)(2) is discretionary with the Court. Advisory Committee's Note to 1966 Amendment, 39 F.R.D. 106. The question thus presented is whether due process requires notice to the absent members of a (b)(2) class.

On this question there exists a split of authority. Some courts have ruled that due process requires notice to the members of a (b)(2) class if the judgment is to be binding on them. See, e. g., *Zeilstra v. Tarr,* 466 F.2d 111 (6th Cir. 1972); *Schrader v. Selective Service System Local Board No. 76 of Wisconsin,* 470 F.2d 73 (7th Cir.), cert. denied, 409 U.S. 1085, 93 S.Ct. 689, 34 L.Ed.2d 672 (1972);[3a] *Eisen v. Carlisle & Jacquelin,* 391 F.2d 555 (2d Cir. 1968), on remand, 52 F.R.D. 253 (S.D.N.Y.1971); 54 F.R.D. 565 (S.D.N.Y.1972); reversed, 479 F.2d 1005 (2d Cir. 1973); vacated and remanded, 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Pasquier v. Tarr,* 318 F.Supp. 1350 (E.D.La. 1970), aff'd, 444 F.2d 116 (5th Cir. 1971). Other courts have held that no notice need be given to the class members because due process is satisfied when the class is adequately represented by counsel. See, e. g., *Hammond v. Powell,* 462 F.2d 1053 (4th Cir. 1972); *Yaffe v. Powers,* 454 F.2d 1362 (1st Cir. 1972); *Lund v. Affleck,* 388 F.Supp. 137 (D.R.I.1975); *White v. Local No. 207 of Laborer's Intl. Union,* 387 F.Supp. 53 (W.D. La.1974); *Mazer v. Weinberger,* 385

---

**3a.** The Seventh Circuit has stated that in light of n. 14 in *Eisen,* 417 U.S. at 177, 94 S.Ct. 2140, the holding in *Schrader* "will presumably have to be reexamined at an appropriate time." *Bijeol v. Benson,* 513 F.2d 965, 968 n. 3 (7th Cir. 1975).

F.Supp. 1321 (E.D.Pa.1974); *Souza v. Scalone,* 64 F.R.D. 654 (N.D.Calif.1974); *American Finance System, Inc. v. Harlow,* 65 F.R.D. 94 (D.Md.1972); *Watson v. Branch County Bank,* 380 F.Supp. 945 (W.D.Mich. 1974); *Lynch v. Household Finance Corp.,* 360 F.Supp. 720 (D.Conn.1973); *Hooks v. Wainwright,* 352 F.Supp. 163 (M.D.Fla. 1972). The commentators have been critical of the line of cases requiring notice to (b)(2) class members. 3B Moore's Federal Practice ¶ 23.55, at 23–1152—23–1153; 7A Wright and Miller, Federal Practice and Procedure, §§ 1786, 1793, at 142–144, 203–205; Miller, "Problems of Giving Notice in Class Actions," 1973, 58 F.R.D. 313, 313–316.

■ The most extensive treatment of the problem is by Chief Judge Fox in *Watson v. Branch County Bank,* supra, at 956–960. We are in general agreement with the conclusions stated therein. An ironclad rule requiring individual notice to members of a (b)(2) class would significantly frustrate use of (b)(2) class actions. It has been pointed out that when members of a (b)(2) class are in the role of plaintiffs, notice would not serve a useful purpose since members of such a class may not "opt out" and thereby prevent an adjudication of their legal interests. *Air Line Stewards and Stewardesses Assn., Local 550 v. American Airlines, Inc.,* 490 F.2d 636, 642 (7th Cir. 1973), cert. denied, 416 U.S. 993, 94 S.Ct. 2406, 40 L.Ed.2d 773 (1974). Furthermore, where the (b)(2) class includes a large number of persons whose identities and whereabouts are unknown, individually mailed notices may well be impossible and notice by publication similarly futile. While we are mindful of the Court's statement in *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 176, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974), that "[t]here is nothing in Rule 23 to suggest that the notice requirements can be tailored to fit the pocketbooks of particular plaintiffs," imposition of a notice requirement on (b)(2) class actions as a matter of due process should be avoided since "the named plaintiffs in class actions raising broad constitutional or statutory questions simply cannot afford to pay for notice to absent class members, and [such] a requirement * * * prevents the suit from being maintained as a class action." *Watson v. Branch County Bank,* 380 F.Supp. 945, 959 (W.D.Mich.1974). We agree with Chief Judge Fox that the discretionary notice provisions of Rule 23(d)(2) are at least presumptively valid as complying with due process, which must be tailored to the "character of the proceedings and the nature of the interests * * * involved * * *." *Mullane v. Central Hanover Bank & Trust Co., Trustee,* 339 U.S. 306, 317, 70 S.Ct. 652, 659, 94 L.Ed. 865 (1950).[3b]

■ The remaining question is, therefore, whether there are special circumstances in this action which require notice to the members of either the plaintiff or defendant class. Rule 23(d)(2) sets forth a list of the special circumstances which might require notice:

"In the conduct of actions to which this rule applies, the court may make appropriate orders: * * * (2) requiring, for the protection of the members of the

**3b.** Due process requires only that "interested parties" be given notice. *Mullane v. Central Hanover Bank & Trust Co., Trustee,* supra, 339 U.S. at 314, 70 S.Ct. 652. We doubt that the members of the defendant class are interested persons in any realistic sense. While the state cannot involuntarily be made a party because of its sovereign immunity, and the plaintiffs' rights can be asserted only against the agents of the state under the authority of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), it is the state's interest, not that of the county clerks, that is in reality involved. The state's interest is represented and protected by its chief legal officer, the Attorney General of Wisconsin, who represents the named defendant and who would also be representing the other members of the defendant class whether or not notice is given.

If the suit had been brought against the state (following a valid Eleventh Amendment waiver), only notice to the state itself would have been required, yet the injunction could still have run against the individual county clerks as agents of the state. See Fed.R.Civ.P. 65(d); *Harrington v. Colquitt County Board of Education,* 449 F.2d 161 (5th Cir. 1971) (*per curiam*). Their interest in the suit is no greater in the instant case, and their due process rights should also be no greater.

class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to intervene and present claims or defense, or otherwise to come into the action;
\* \* \* ."

As to the members of the plaintiff class, there is no necessity for notice, since the representation of their interests has been "fair and adequate" and no intervention by class members is either necessary or desirable. We are also convinced, as stated above, that the representation afforded the interests of the defendant class has been more than adequate and that intervention at this stage of the action is not needed. Defendant Zablocki will, however, be required to send a copy of the judgment to all the members of the defendant class of county clerks.

In summary, the previous order establishing the class of plaintiffs is affirmed, and this action is further determined to be a class action with respect to all county clerks within the State of Wisconsin, all of whom are required by § 245.10(1), Wisconsin Statutes (1973), to refuse to issue marriage licenses to members of the class of plaintiffs without court order. No prejudgment notice to the members of either class is required by either Rule 23 or due process, although notice of the judgment will be provided to the members of the defendant class.

## III.

### A.

The challenged statute, § 245.10(1), creates two groups of Wisconsin residents who desire to marry and subjects one of the groups, the plaintiff class in this action, to special treatment. This group consists of persons who have minor issue not in their custody whom they are under an obligation to support by a court order or judgment. In order for these persons to obtain a marriage license, they must obtain a court order granting them permission to marry. None of the county clerks in Wisconsin can lawfully issue a marriage license to such persons in the absence of a court order. Any member of the burdened class who wishes to marry outside Wisconsin must obtain a court order prior to the marriage. Section 245.10(4), Wis.Stats.; *State v. Mueller*, 44 Wis.2d 387, 171 N.W.2d 414 (1969). Any marriage by a member of the plaintiff class contracted without compliance with the statute is void, whether it is entered into within Wisconsin or elsewhere, § 245.10(5). Under § 245.30(1)(f),[4] persons who obtain marriage licenses without complying with § 245.10 are subject to criminal penalties. See, *State v. Mueller*, supra.

In order to obtain a court order granting permission to marry, a verified petition must be filed with the court that granted the judgment or support order, or the court having divorce jurisdiction in the county wherein the issue reside or the marriage license application is made. The court must then schedule a hearing at which both parties to the intended marriage are required to appear. Notice of the proceeding must be given to the custodian of the minor issue and, if the minor issue was of a previous marriage, to the family court commissioner of the county where permission is being sought and the family court commissioner of the court which granted the divorce judgment. At the hearing, the marriage license applicant must prove compliance with the prior support obligation and also that the children "are not then and are not likely thereafter to become public charges \* \* \*." § 245.10(1), Wis.Stats. (1973).

---

4. "245.30 Penalties. (1) The following shall be fined not less than $200 nor more than $1,000, or imprisoned not more than one year, or both:
 \* \* \* \* \* \*
 "(f) *Penalty for obtaining license without permission of court.* Any person who obtains a marriage license contrary to or in violation of s. 245.10, whether such license is obtained by misrepresentation or otherwise, or whether such marriage is entered into in this state or elsewhere."

The effects of the statute on plaintiff Redhail should be carefully noted. He is unable to marry anywhere without a court order so long as he maintains his Wisconsin residency. Were he to petition a court for permission to marry, the court would have to deny the petition since Redhail's indigency has made it impossible for him to satisfy the support obligation ordered in the paternity action. Furthermore, even if he could somehow pay the arrearage, because his child receives AFDC benefits in excess of the $109 per month support obligation, the child would still be a public charge.

In determining whether the classification created by the statute complies with the requirements of equal protection, it is necessary to first decide what intensity of scrutiny it must be subjected to and then examine the interests arguably furthered by the statute.

### B.

Under the equal protection approach currently utilized by the Court, statutory classifications are generally measured against the rational relationship test and are upheld if they are rationally related to some legitimate governmental interest. *United States Department of Agriculture v. Moreno*, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); *San Antonio School District v. Rodriguez*, 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973). If, however, the classification impinges upon fundamental rights or constitutes a suspect classification, it is subjected to strict scrutiny and can be upheld only if it is necessary to promote compelling governmental interests and is narrowly drawn to express only such interests. *Roe v. Wade*, 410 U.S. 113, 155, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Shapiro v. Thompson*, 394 U.S. 618, 634, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969).

In our society, marriage has long been regarded as one of the most basic social institutions, and the corresponding individual interests involved have been recognized as within the constitutional rights of privacy as enunciated in *Roe v. Wade*, supra, 410 U.S. at 152–153, 93 S.Ct. 705. As

Mr. Justice Douglas, writing for the majority in *Griswold v. Connecticut*, 381 U.S. 479, 486, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510 (1965), stated:

"We deal with a right of privacy older than the Bill of Rights—older than our political parties, older than our school system. Marriage is a coming together for better or for worse, hopefully enduring, and intimate to the degree of being sacred. It is an association that promotes a way of life, not causes; a harmony in living, not political faiths; a bilateral loyalty, not commercial or social projects. Yet it is an association for as noble a purpose as any involved in our prior decisions."

A long line of decisions make it evident that although not explicitly set forth in the constitution, there is a constitutionally protected right to marry which occupies the status of being a fundamental right. *Roe v. Wade*, supra, 410 U.S. at 152, 93 S.Ct. 705; *United States v. Kras*, 409 U.S. 434, 444, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973); *Boddie v. Connecticut*, 401 U.S. 371, 376, 91 S.Ct. 780, 28 L.Ed.2d 113 (1971); *Loving v. Virginia*, 388 U.S. 1, 12, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); *Griswold v. Connecticut*, supra, 381 U.S. at 486, 495, 85 S.Ct. 1678; *Skinner v. Oklahoma*, 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655, (1942); *Meyer v. Nebraska*, 262 U.S. 390, 399, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). Lower federal courts have also recognized the importance of the interests associated with marriage and have afforded them constitutional protection. See, e. g., *O'Neill v. Dent*, 364 F.Supp. 565, 568–569 (E.D.N.Y.1973); *Holt v. Shelton*, 341 F.Supp. 821, 822–823 (M.D.Tenn.1972); *Wymelenberg v. Syman*, 328 F.Supp. 1353, 1354 (E.D.Wis.1971).

It is apparent that the challenged statute infringes upon plaintiff Redhail's ability to marry. In contrast to all other Wisconsin residents, he, and all the members of the class he represents, must obtain court permission before any county clerk in Wisconsin will issue a marriage license. Furthermore, other provisions of the statute give it extra-territorial effect, making

it impossible for Redhail, or anyone in the plaintiff class, to enter into a valid marriage anywhere without a court order. The statute's requirement that all members of the plaintiff class obtain court permission to marry does, in a very concrete way, limit their right to marry in a manner not visited upon all other residents of Wisconsin. Since the classification created by the statute places substantial burdens on the ability of the class members to marry, it affects their fundamental rights and must be subjected to strict scrutiny.

Additionally, the statute places a special burden on some members of the plaintiff class. In Redhail's case, because of his poverty he has been unable to satisfy the support obligation ordered in the paternity action, and, hence, a state court could not grant him permission to marry. Other members of the plaintiff class are barred from obtaining court permission because although they have fulfilled their support obligations, their minor issue are public charges or likely to become such.[5] These members of the plaintiff class would not usually have the financial resources to voluntarily obviate any necessity for governmental aid to their children and to further assure that such aid would not be necessary in the future.

While wealth discrimination alone has not been held by the Court to be an adequate basis for involving strict scrutiny, *San Antonio School District v. Rodriguez*, 411 U.S. 1, 29, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973), classifications based on wealth have been overturned in the area of voting, see, e. g., *Bullock v. Carter*, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972) (primary filing fee requirement); *Harper v. Virginia State Board of Elections*, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966) (poll tax); criminal procedure, see, e. g., *Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (counsel on direct appeal); *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed.

891 (1956) (transcripts); and incarceration, *Tate v. Short*, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971); *Williams v. Illinois*, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970). The Court in *Rodriguez* noted at 411 U.S. at page 20, 93 S.Ct. at page 1290:

" * * * The individuals, or groups of individuals, who constituted the class discriminated against in our prior cases shared two distinguishing characteristics: because of their impecunity they were completely unable to pay for some desired benefit, and as a consequence, they sustained an absolute deprivation of a meaningful opportunity to enjoy that benefit. * * * "

■ The characteristics identified by the Court in *Rodriguez* are present here with respect to some members of the plaintiff class. Because they lack sufficient financial resources, some of them are unable to fulfill support obligations, while others who have satisfied their support obligations lack the additional wealth required to insure that their minor issue are not public charges nor likely to become such. In both instances, these class members cannot obtain permission to marry. The wealth discrimination inherent in the statute thus provides an additional justification for applying the strict scrutiny test.

Defendant Zablocki and the state have urged that instead of the strict scrutiny test, a more flexible "sliding scale" equal protection approach should be utilized here. See, *Rodriguez*, supra, at 98–110, 93 S.Ct. at 1278 (Marshall, Jr., dissenting); *Boraas v. Village of Belle Terre*, 476 F.2d 806 (2d Cir. 1973), reversed, sub nom. *Village of Belle Terre v. Boraas*, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974); *Women's Liberation Union of Rhode Island, Inc. v. Israel*, 379 F.Supp. 44, 49–50 (D.R.I.1974), aff'd, 512 F.2d 106 (1st Cir. 1975); *Timberlake v. Kenkel*, 369 F.Supp. 456 (E.D.Wis.1974) (Reynolds, J.), vacated and remanded, 510

---

**5.** Vernon T. Leipzig, Jr., the plaintiff in the companion case entitled *Leipzig v. Pallamolla*, D.C., 418 F.Supp. 1073, had fully satisfied his child support obligations at the time he petitioned for permission to remarry. Nevertheless, Branch 2 of the County Court, Kenosha County, Wisconsin, denied permission because the four minor children of Leipzig's first marriage were then receiving AFDC benefits.

F.2d 976 (7th Cir. 1975). See generally, Gunther, *The Supreme Court 1971 Term, Foreward, In Search of Evolving Doctrine on a Changing Court: A Model for a New Equal Protection*, 86 Harv.L.Rev. 1 (1972).

▮ There are several reasons, however, why a sliding scale equal protection analysis is not appropriate in this case. First, it is not apparent which contexts require application of the more flexible equal protection approach. Contrast, *San Antonio School District v. Rodriguez*, supra, 411 U.S. at 30–31, 93 S.Ct. at 1278, and *Village of Belle Terre v. Boraas*, supra, with *Jimenz v. Weinberger*, 417 U.S. 628, 94 S.Ct. 2496, 41 L.Ed.2d 363 (1974); *United States Department of Agriculture v. Moreno*, 413 U.S. 528, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); *Weber v. Aetna Casualty & Surety Co.*, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). Moreover, despite the concern voiced by Mr. Justice Marshall in his dissent in *Sosna v. Iowa*, 419 U.S. 393, 418–419, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), the opinion of the Court in that case is devoid of language indicating that strict scrutiny is no longer to be applied to classifications which infringe upon fundamental rights, such as marriage, and the result in *Sosna* does not vitiate earlier decisions mandating use of the strict scrutiny test.[6] Additionally, it is very questionable whether the statute could be upheld by using a sliding scale analysis, since less restrictive means exist by which the governmental interests may be furthered. See, *United States Department of Agriculture v.*

*Moreno*, supra, 413 U.S. at 536–537, 93 S.Ct. at 2821 (1973); *Timberlake v. Kenkel*, supra, at 466–468. The classification created by the challenged statute must, therefore, be measured against the requirements of the strict scrutiny test.

### C.

▮ Where a statutory classification is tested against the requirements of the strict scrutiny test—

" * * * the state bears the burden of showing how compelling its interest may be; depending upon how compelling its interest may be, showing that the specific measure is necessary to its achievement; and showing that the specific measure is sufficiently narrowly drawn to achieve the state's interest. *Roe v. Wade*, 410 U.S. 113, 155, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Shapiro v. Thompson*, 394 U.S. 618, 634, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Aptheker v. Secretary of State*, 378 U.S. 500, 508, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964)." *Baird v. Lynch*, 390 F.Supp. 740, 749 (W.D.Wis. 1974).

Defendant Zablocki and the state have urged that there are two interests furthered by the statute: (1) providing counseling to the prospective marriage partners emphasizing the necessity of fulfilling pre-existing child support obligations, and (2) protecting the welfare of the children whom members of the plaintiff class are under a court determined obligation to support.[7]

---

**6.** In *Sosna v. Iowa*, supra, a one-year durational residency requirement for divorce was upheld against attacks based on the rights to interstate travel and to due process. The substance of the court's approach defies simple characterization, although it did state that the residency requirement "may reasonably be justified on grounds other than purely budgetary considerations or administrative convenience," supra, at 406, 95 S.Ct. at 561, and that the plaintiff therein "was not irretrievably foreclosed from obtaining some part of what she sought." *Id.*, at 406, 95 S.Ct. at 561. Whether *Sosna* foreshadows a new approach to statutes restricting "fundamental rights" remains uncertain.

**7.** While in *Beberfall v. Beberfall*, 54 Wis.2d 329, 195 N.W.2d 625 (1972), the Wisconsin court stated that the policy behind § 245.10(1) "is to make certain that the children of the first marriage are not to become public charges," supra at 335, 195 N.W.2d at 629, the state's interest in saving welfare costs is not a compelling one, *Shapiro v. Thompson*, supra, 394 U.S. at 633, 89 S.Ct. at 1322, and both defendant Zablocki and the state have conceded this. Additionally, there are other statutory tools which the state may use to enforce child support obligations and avoid increased welfare expenses.

 There is some evidence that one of the chief purposes of § 245.10(1) was to insure that persons who had failed to fulfill support obligations arising from a previous marriage be counseled before they incurred new obligations. See, 28 W.S.A. § 245.10, Legislative Council Notes, 1959, 1975 pocket part, at 36; *Wisconsin Legislative Council— General Report*, Vol. 5, at 68 (1959). The state's interest in such counseling is not, however, of sufficient importance to justify § 245.10(1). The statute does not simply provide for mandatory counseling before a second marriage, but prohibits remarriage without court permission which can be granted only if the license applicant has fulfilled support obligations and if the minor children are not public charges or likely to become such. The state's interest in counseling is not, therefore, sufficient to justify the restriction on plaintiffs' marital rights because it is not a sufficiently "compelling" state interest and the statute is also not "narrowly drawn to express only the legitimate state interests at stake." *Roe v. Wade*, 410 U.S. 113, 155, 93 S.Ct. 705, 728, 35 L.Ed.2d 147 (1973).

 The second state interest assertedly furthered by the statute—safeguarding the welfare of children—might conceivably be termed both a legitimate and "compelling" governmental interest. It does not, however, justify the restriction on the rights of the plaintiff class imposed by § 245.10(1), since the statute is not necessary to the achievement of this interest.

Wisconsin law already has several statutory means whereby support obligations may be enforced without restricting the right to marry. If the children are issue of a previous marriage, § 247.232 and § 247.-265 give the judge and family court commissioner power to order the parent to make a wage assignment, and under § 295.-03 disobedience of a court order to pay child support may be punished as civil contempt without proof of personal demand for payment and refusal to pay. If the support

obligation arises through a paternity action, the court can order the parent to execute a wage assignment, § 52.21(2), order commitment to the county jail, § 52.39, or subject the parent to civil contempt proceedings, § 52.40. Besides these civil remedies, the state may charge a nonsupporting parent with the felony of abandonment of a minor child, § 52.05, or the misdemeanor offense of failure to support a minor child under § 52.055. By adroit use of probation and the Huber law, § 56.08, it can be assured that parents found guilty of these criminal penalties will comply with their support obligations. These statutory provisions give the state alternative means of enforcing the child support obligations of the plaintiff class members which do not abridge their rights to marry.

Furthermore, for those members of the plaintiff class whose children are public charges, allowing their marriage will have no effect on the children's welfare, since AFDC and other welfare programs will continue to provide support for the children. It is also reasonable to believe that at least some members of the plaintiff class will better their financial circumstances by marriage due to the likelihood of a working spouse.[8]

 Application of the strict scrutiny test thus leads inexorably to the conclusion that the challenged statute cannot stand. While it is true that the state has legitimate and substantial interests in regulating the domestic relations of its residents, *Sosna v. Iowa*, 419 U.S. 393, 404, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), the statute at issue here does not deal with areas such as the age, health, and competency which may be required by legislation of persons desirous of contracting marriage. The interference with the constitutionally protected right to marry caused by the challenged statute cannot withstand close scrutiny, and it therefore runs afoul of the equal protection clause.

For the foregoing reasons,

8. As the Court noted in *Taylor v. Louisiana*, 419 U.S. 522, 535 n. 17, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), Department of Labor statistics indicate that as of October 1974, 54.2% of all women between ages 18 and 64 were in the labor force.

IT IS ORDERED that the clerk of court enter judgment in favor of the plaintiff Roger G. Redhail and the class he represents, and against defendant Thomas E. Zablocki and the class he represents declaring § 245.10(1), (4), and (5), Wis.Stats. (1973), unconstitutional under the equal protection clause of the Fourteenth Amendment to the United States Constitution and invalid, void, and of no effect.

IT IS FURTHER ORDERED that defendant Thomas E. Zablocki, the class he represents, and their officers, agents, servants, employees, and their successors and those persons in active concert or participation with them who receive actual notice of the judgment be permanently enjoined from denying applications for marriage licenses on the grounds that the applicant has failed to comply with the provisions of § 245.10(1), Wis.Stats. (1973).

IT IS FURTHER ORDERED that defendant Thomas E. Zablocki mail a copy of this opinion and order and of the judgment to all members of the class he represents.