**STATE of Minnesota, Appellant,**

v.

**Robert John McCORMICK, Respondent.**

**No. 48332.**

Supreme Court of Minnesota.

Oct. 27, 1978.

Warren Spannaus, Atty. Gen., Thomas L. Fabel, Deputy Atty. Gen., Jane Prohaska, Sp. Asst. Atty. Gen., St. Paul, Robert W. Kelly, County Atty., Stillwater, for appellant.

C. Paul Jones, Public Defender, Minneapolis, for respondent.

OTIS, Justice.

This is an appeal by the state from an order of the Washington County District Court granting defendant's motion to dismiss a complaint charging him with unlawfully detaining his own children in violation of Minn.St. 609.26. We affirm.

In 1976 defendant's wife obtained a California divorce and was granted custody of the couple's two children. Defendant was granted specific visitation rights. The mother and children then moved to Minnesota. Defendant remained in California.

After defendant had exercised his visitation rights in October 1976 the mother filed a civil neglect petition against defendant in Washington County District Court alleging that defendant had molested the children. The court issued an order restraining the defendant from visiting the children until further order of the court.

In June 1977 the defendant allegedly picked up the children as they walked to school and took them to California. On June 7, a complaint was issued charging the defendant with detaining his children outside the State of Minnesota with intent to deny another's rights under an existing court order in violation of Minn.St. 609.26. In September 1977 the defendant was arrested by federal agents and returned to Minnesota to stand trial on charges of violating Minn.St. 609.26 and 609.343(a), second degree criminal sexual conduct. The second charge, which is not involved in this appeal, apparently stems from the same alleged acts that were the basis for the mother's civil neglect petition.

Prior to the omnibus hearing on these charges, the defendant moved to dismiss the charge of unlawful detention of his children on the ground that, because the conduct prohibited by Minn.St. 609.26 must occur outside the territorial boundaries of the State of Minnesota, the court was without jurisdiction. The district court agreed with the defendant's construction of the statute and granted the motion. It stayed its dismissal order pending this appeal.

Minn.St. 609.26 reads as follows:

"Whoever intentionally detains his own child under the age of 18 years outside the state of Minnesota, with intent to deny another's rights under an existing court order may be sentenced to imprisonment for not more than two years or to payment of a fine of not more than $2,000, or both."

The plain language of this provision requires the criminalized conduct, detaining his own child, to occur outside the State of Minnesota. The defendant contends that this requirement of itself deprives this state of jurisdiction. The state, however, contends that the provision is a legitimate extension of the state's jurisdiction over conduct that, though occurring without the state, causes a result within the state that is detrimental to protectible interests of the state and its citizens.

At common law the criminal jurisdiction of state courts was limited to crimes committed within the territorial boundaries of the state. See, *State v. Stickney,* 118 Minn. 64, 66–67, 136 N.W. 419, 420 (1912). This limitation, however, has been modified by Minn.St. 609.025, which expands the jurisdiction of Minnesota courts as follows:

"A person may be convicted and sentenced under the law of this state if:

"(1) He commits an offense in whole or in part within this state; or

"(2) Being without the state, he causes, aids or abets another to commit a crime within the state; or

"(3) Being without the state, he intentionally causes a result within the state prohibited by the criminal laws of this state.

"It is not a defense that the defendant's conduct is also a criminal offense under the laws of another state or of the United States or of another country."

We do not find in these statutes adequate grounds for disregarding limitations on extraterritorial jurisdiction which have long been recognized as the law of the land.

In 1855 the Supreme Court of the State of New York addressed a similar problem in *People v. Merrill,* 2 Parker's

Crim.R. 590. Defendants were charged with violation of a statute which provided that:

"* * * 'every person who shall sell, or in any manner transfer, for any term, the services or labor of any black, mulatto, or other person of color, *who shall have been forcibly taken, inveigled or kidnapped* from this state, to any other state, place or country, shall, upon conviction, be punished by imprisonment in a state prison not exceeding ten years, or in a county jail not exceeding one year, or by a fine not exceeding $1,000, or by both such fine or imprisonment.'"

In holding that the statute violated the Sixth Amendment of the U. S. Constitution, the court made these observations:

"The penal acts of one state can have no operation in another state. The courts of this state, have no power to enforce here the criminal laws of another state. Here, laws are local, and affect nothing more than they can reach.

\* \* \* \* \* \*

"* * * The third and fourth counts of the indictment charge substantially that Northup, on the 10th day of March, 1841, was a free negro, and inhabitant of the state of New York; that he was on that day, unlawfully and feloniously, and without lawful authority, inveigled from this state to the city of Washington, in the District of Columbia, by the defendants, and that they, on the first day of January, 1853, at the city of Washington, unlawfully and feloniously sold him as a slave. Now the act of selling was a lawful one in the District of Columbia, for congress, though often invoked so to do, have not assumed to prohibit the sale of slaves in that district. The defendants therefore had the right to sell, by the laws of the district, and for that act alone were not punishable there.

\* \* \* \* \* \*

"The inveigling with *intent* to sell there constitutes the crime, and is properly and clearly punishable as already shown. It is the sale alone, for which the defendants are indicted, under the counts we are now considering, and that sale in a district where it was perfectly lawful.

"It can not be said that the constitution of the United States is not operative upon a case of this character. It is the supreme law of the land, and binding upon all states and upon all state courts."[1]

Id. at 603, 604.

The appellant cites as authority for reversal *State v. Mueller,* 44 Wis.2d 387, 171 N.W.2d 414 (1969); *Johnston v. United States,* 351 U.S. 215, 76 S.Ct. 739, 100 L.Ed. 1097 (1956); and *Hyde v. United States,* 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114 (1912). In *Mueller* the Wisconsin Supreme Court sustained a statute which prohibited a father's marriage outside of Wisconsin without permission of a court, under circumstances where he had other dependents by a prior marriage. Without citing authority for its conclusion, the court stated:

"In determining whether a given legislative enactment can have extraterritorial effect, we believe the legitimate protectible interests of the state should be balanced against inconvenience to the accused and invasion, if any, upon the sovereignty of sister states."

44 Wis.2d 395, 171 N.W.2d 418. Subsequently the statute upheld in the *Mueller* case was for other reasons declared unconstitutional by the United States Supreme Court in *Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978). The *Johnston* case involved a question of venue in a prosecution under a federal statute, and the *Hyde* case grounded both jurisdictions and venue on an overt act committed within the forum state which the court found was an element of the federal crime of conspiracy. The state argues that the jurisdictional question can be resolved by construing the word "detains" to include the word "takes" since it appears without

1. See also, *In re Rosdeitscher,* 33 F. 657 (8 Cir. 1888) and other cases annotated in 1 Cooley, Constitutional Limitations (8 ed.) p. 248.

dispute that defendant wrongfully removed his children from Minnesota where he was physically present. In *Olsen v. State,* 287 Minn. 536, 538, 177 N.W.2d 424, 427 (1970), we indicated we agreed with the trial court's memorandum in that case which stated " 'detains' probably means the same as 'takes, confines or restrains' " which was the language of the statute prior to its amendment by L.1967, c. 570. Notwithstanding that dictum, the fact remains that a criminal statute must be strictly construed and we are not at liberty to read into it language intentionally omitted when it was amended by the legislature.

A more persuasive argument is made by the state in equating this case with extra-territorial jurisdiction recognized in nonsupport cases where courts have found jurisdiction over nonresidents by their acts of omission in the forum state. *Poole v. State,* 60 Wis.2d 152, 208 N.W.2d 328 (1973); *State v. Klein,* 4 Wash.App. 736, 484 P.2d 455 (1971); *People v. Jones,* 257 Cal.App.2d 235, 64 Cal. Rptr. 622 (1967); *State v. Carr,* 107 N.H. 477, 225 A.2d 178 (1966). Nevertheless, we conclude that however fine the line may be, the act of omission in nonsupport cases arises out of a fundamental obligation imposed on a parent at the time when the court had in personam jurisdiction. The situs of that obligation originates and remains with the residence of the child. Strong public policy supports jurisdiction to enforce that right wherever the child is domiciled. The act of detaining a child in violation of a court order denies a similar right different only in degree, but is an offense committed not so much against the child as against the other parent.

■ The motivation for adopting this statute and repealing its predecessor is not clear. Before its amendment, Minn.St. 609.26 read as follows:

"Whoever intentionally takes, confines or restrains his own child under the age of 18 years with intent to prevent another from obtaining or retaining his custody pursuant to an existing court order may be sentenced to imprisonment for not more than two years or to payment of a fine of not more than $2,000, or both."

Under that statute, Minnesota would indisputably have had jurisdiction if, as alleged, the defendant wrongfully abducted his children in violation of a court order while physically present in this state. The purpose for making the offense of "detaining" a felony is quite obviously to facilitate extradition. Governors are uniformly reluctant to extradite for offenses which are simply misdemeanors. However, its designation as a felony results in a penalty of questionable constitutionality. A defendant who wrongfully detains or secretes his own child within the boundaries of Minnesota in violation of a court order can only be found in criminal contempt of court and punished for a misdemeanor under Minn.St. 588.20(4), while his counterpart detaining a child in a neighboring state is guilty of a felony. This may in itself be sufficient reason for finding the statute invalid as was noted by the California court in *People v. Jones,* 257 Cal.App.2d 235, 238–39, 64 Cal.Rptr. 622, 624 (1967) *supra.* There the court observed:

"Thus, a nonsupporting father who remains in the state of his domicile may be convicted of a felony if that state is other than California, whereas he may be convicted only of a misdemeanor if that state is California.

"Discrimination *solely* on the basis of location inside or outside of the state bears no more relation to the punitive and deterrent purposes of section 270 than differing locations of nonsupporting fathers within this state.

"We think that any such discrimination would result in a denial to nonresident fathers of equal protection of the laws, as guaranteed by the Fourteenth Amendment to the United States Constitution."

One further serious infirmity in the statute is its potential application where no contact between the parents, the child and the state of Minnesota exists. The state's argument assumes that the statute is intended to protect only the welfare of children residing with a parent in Minnesota pursuant to rights conferred by a Minneso-

ta court. The statute is not so limited. For example, by its plain language it would also make it a felony in Minnesota for a California parent to wrongfully detain a child from a parent living in Colorado in violation of rights conferred by a Nebraska court order. Granted Minnesota is not likely to assume jurisdiction under such circumstances, this hypothetical simply illustrates the scope of the prohibition included in Minn.St. 609.26 and points up the difficulty of determining with certainty what interests the statute is designed to protect.

To summarize, it is true that Minnesota is the state which has the greatest and perhaps the only interest in the subject of this litigation. In the context of this case, it is equally clear that the custodial parent and her children have significant contacts with this state. The order violated is that of a Minnesota court. Any unwarranted intrusion into the sovereignty of a sister state can be corrected by the refusal of the governor of that state to grant extradition. These are persuasive arguments for approving jurisdiction in Minnesota. Nevertheless, this is a criminal case not subject to the same flexibility enjoyed by the more elastic rules governing extraterritorial jurisdiction in civil cases. Defendant constitutionally and historically can only be tried in the district where the crime occurred, a right which experience demonstrates is designed to further the ends of justice.

The fact that so few courts have addressed the question suggests that traditional restraint in prosecuting offenses committed outside the borders of a state is broadly accepted. While we recognize the serious dimensions of the social and economic problems the legislature seeks to correct, we are of the opinion that in adopting Minn.St. 609.26 it has reached too far. A more effective solution is the adoption of interstate compacts to enforce support orders, and the enactment of federal legislation which avoids constitutional difficulties inherent in the assertion of extraterritorial criminal jurisdiction by state courts.

Affirmed.