Wisconsin Industrial Energy Group, Inc.
and Citizens Utility Board,
Petitioners-Appellants,

v.

Public Service Commission of Wisconsin,
Respondent-Respondent,

Wisconsin Electric Power Company and
Wisconsin Power and Light Company,
Intervenors-Respondents,

Wisconsin Public Service Corporation, Intervenor.

Supreme Court

*No. 2010AP2762. Oral argument April 17, 2012.
—Decided July 11, 2012.*

2012 WI 89

(Also reported in 819 N.W.2d 240.)

For the petitioners-appellants there were briefs by *Kira E. Loehr* and *Citizens Utility Board, Steven A. Heinzen, P. Duncan Moss* and *Godfrey & Kahn, S.C.,* Madison, and oral argument by *Kira E. Loehr.*

For the respondent-respondent there were briefs by *Cynthia Smith, Justin W. Chasco, Steven Levine* and *Public Service Commission of Wisconsin* and oral argument by *Justin W. Chasco.*

For the intervenors-respondents there were briefs by *Brian D. Winters, Joseph Orion Wilson* and *Quarles & Brady LLP,* Milwaukee, *Michael Greiveldinger, Arshia Javaherian,* and *Wisconsin Power and Light Company,* and oral argument by *Michael S. Greiveldinger* and *Joseph Orion Wilson.*

¶ 1. PATIENCE DRAKE ROGGENSACK, J. This case comes before us by certification from the court of appeals, pursuant to Wis. Stat. § 809.61 (2009–10).[1] We are asked to decide whether the Public Service Commission of Wisconsin (PSC) correctly concluded that Wisconsin Power and Light's (WPL) application to construct a large, out-of-state, electric generating facility was properly reviewed under Wis. Stat. § 196.49(3), the "Certificate of Authority" (CA) statute,[2] or whether Wis. Stat. § 196.491(3), the "Certificate of Public Convenience and Necessity" (CPCN) statute, should have been applied.

¶ 2. Applying due weight deference, we conclude that the PSC's interpretation of the CPCN law as applying exclusively to in-state facilities and its decision to analyze WPL's application under the CA law were reasonable, and that there is not a more reasonable interpretation of the laws. The PSC examined the language, purpose, and context of both the CA and the CPCN laws and concluded that the CA law governed

[1] All subsequent references to the Wisconsin Statutes are to the 2009–10 version unless otherwise indicated.

[2] The titles "Certificate of Authority," as referring to Wis. Stat. § 196.49, and "Certificate of Public Convenience and Necessity," as referring to Wis. Stat. § 196.491(3), are somewhat misleading, in that both laws refer to the PSC's consideration of "public convenience and necessity." Nonetheless, the parties have used these titles, and we adopt their terminology in this case.

WPL's application to construct an out-of-state facility. Additionally, the PSC concluded that applying the CPCN law to an out-of-state facility would exceed the jurisdiction of Wisconsin laws and lead to unreasonable results. Based on our review of these statutes and the corresponding administrative rules, we conclude that there is not a more reasonable interpretation of the CA and the CPCN laws. Accordingly, we affirm the circuit court's order,[3] which affirmed the PSC's November 6, 2008, Interim Order in PSC Docket No. 6680–CE–173.

## I. BACKGROUND

¶ 3. On June 6, 2008, WPL filed an application with the PSC for the construction of a 200–megawatt wind-powered electric generating facility in Freeborn County, Minnesota, to be known as the Bent Tree Wind Project. The application was entitled "Application for Certificate of Public Convenience and Necessity" and was filed "pursuant to the requirements of Wis. Stat. §§ 196.49, 196.491 . . . and any other rule or law deemed applicable by the [PSC]."

¶ 4. In response to WPL's application, the PSC issued a Notice of Proceeding and Request for Comments, seeking public comment on whether WPL's application should be reviewed under the CPCN or the CA law. Petitioners here, Wisconsin Industrial Energy Group, Inc. and Citizens Utility Board (collectively, WIEG), filed comments in response to the PSC's Notice, arguing that the PSC was statutorily required to apply the CPCN law because Bent Tree exceeded the CPCN law's 100–megawatt threshold, thereby triggering that law's more demanding review procedures. The PSC held an open meeting at which it deliberated on the issue.

---

[3] The Honorable John C. Albert of Dane County presided in the circuit court.

¶ 5. On November 6, 2008, the PSC issued an Interim Order wherein it concluded that the CA law was the appropriate statute under which to review WPL's Bent Tree application. In its Interim Order, the PSC acknowledged that neither the CA nor the CPCN law explicitly addressed whether either law applied to out-of-state facilities. However, the PSC ultimately concluded that the CA law could validly be applied to such facilities, based on the language, context, and historical application of that law.

¶ 6. Additionally, the PSC noted that the procedures for reviewing applications under the CA law afforded ample ratepayer protections, such that the CPCN did not need to be stretched to apply to out-of-state facilities in an attempt to better protect ratepayers. Rather, the PSC concluded that applying the CPCN law to an out-of-state facility would present problems because multiple provisions in the CPCN law would be unreasonable or absurd if applied to applications for out-of-state facilities.

¶ 7. The PSC noted the " 'elementary principle[] that the laws of one State have no operation outside of its territory, except so far as is allowed by comity,' " quoting *Pennoyer v. Neff*, 95 U.S. 714, 722 (1877). Additionally, the PSC recognized that Wisconsin law specifically contemplates a limitation based on the state's physical boundaries, citing Wis. Stat. § 1.01 ("[t]he sovereignty and jurisdiction of this state extend to all places within the boundaries declared in article II of the constitution.").

¶ 8. The PSC discussed multiple provisions of the CPCN law that, if applied to an out-of-state facility, could require the PSC to assert regulatory authority beyond the state's borders. Such effect, the PSC concluded, could interfere with the host state, while afford-

ing no benefit to Wisconsin residents. The PSC rejected the possibility of narrowly construing certain provisions of the CPCN law to make that law more reasonable as applied to out-of-state facilities; instead, the PSC decided that the most reasonable approach was to interpret the CPCN law as applying exclusively to facilities within the state.

¶ 9. The PSC noted that its conclusion was supported by the legislative history of the CPCN law, which included a statement from the Legislative Reference Bureau's (LRB) analysis of the bill. The LRB analysis stated that the CPCN law "establishes a method whereby the development of major electric generating and transmission facilities *in this state* is subject to scrutiny by the public . . . and to approval by [the PSC and the DNR]." (Emphasis in Interim Order.) The PSC found this helpful because the LRB's analysis was " 'printed with and displayed on the bill when it [was] introduced in the legislature,' " quoting *Dairyland Greyhound Park, Inc. v. Doyle,* 2006 WI 107, ¶ 32, 295 Wis. 2d 1, 719 N.W.2d 408.

¶ 10. Finally, the PSC concluded that it could reasonably apply the CA law to review out-of-state construction projects, with no need to sever or modify any of that law's provisions. The PSC noted that it had previously applied the CA law to review public utilities' applications for out-of-state projects, and that the relevant rules, *e.g.*, Wis. Admin. Code § PSC 112.05(2) (May 2008),[4] expressly contemplated such applications. Accordingly, the PSC concluded the most reasonable course was to evaluate WPL's Bent Tree application under the CA law.

---

[4] All subsequent references to the Wisconsin Administrative Code are to the May 2008 version unless otherwise indicated.

¶ 11. Commissioner Lauren Azar dissented from the Interim Order. She agreed with WIEG's primary argument that the more demanding application and hearing procedures under the CPCN law were mandatory whenever a construction project was proposed that exceeded the 100–megawatt threshold under the CPCN, regardless of location. She relied on the notion that the CPCN law was intended to afford greater ratepayer protections, and therefore allowing applications for large facilities to be processed under the CA law could erode such protections.

¶ 12. After entry of the PSC's Interim Order, the PSC held a hearing and open meetings on WPL's Bent Tree application, and considered both in-person and pre-filed testimony. On July 30, 2009, the PSC granted WPL a Certificate of Authority for the Bent Tree project.

¶ 13. On August 27, 2009, WIEG petitioned for judicial review of the PSC's decision in the Dane County Circuit Court, pursuant to Wis. Stat. § 196.41 and Wis. Stat. § 227.52. The circuit court concluded that, although de novo review applied to the PSC's decision to apply the CA rather than the CPCN law, the PSC's decision was correct. WIEG appealed, and the court of appeals then certified the question to this court. We accepted the certification.

## II. DISCUSSION

### A. Standard of Review

¶ 14. This is a review of an administrative agency's decision under Wis. Stat. § 227.52. When an administrative agency's decision is challenged in the

586

circuit court under § 227.52, an appellate court reviews the decision of the agency, not that of the circuit court. *Cnty. of Dane v. LIRC,* 2009 WI 9, ¶ 14, 315 Wis. 2d 293, 759 N.W.2d 571. We are asked to review whether the PSC properly concluded that the CA law was the correct standard under which to review WPL's Bent Tree application, or whether the CPCN law should have been applied. The interpretation of statutes and their application to undisputed facts are questions of law, which we review independently. *Id.*

¶ 15. Statutory interpretation begins with the language of the statute at issue. *Watton v. Hegerty,* 2008 WI 74, ¶ 14, 311 Wis. 2d 52, 751 N.W.2d 369. "If the meaning of the statute is plain, we ordinarily stop the inquiry." *Id.* (quoting *State ex rel. Kalal v. Circuit Court for Dane Cnty.,* 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110). The plain meaning of a statute can be discerned from the words used, as well as the context in which those words are used. *Id.* Additionally, statutory purpose is helpful in a plain meaning analysis; courts will favor an interpretation of statutory language that fulfills the statute's purpose. *See State v. Hanson,* 2012 WI 4, ¶ 17, 338 Wis. 2d 243, 808 N.W.2d 390. Statutory purpose can be stated expressly or it may be discerned from context and structure. *Id.* Moreover, statutory language is not interpreted in isolation "but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." *Watton,* 311 Wis. 2d 52, ¶ 14 (quoting *Kalal,* 271 Wis. 2d 633, ¶ 46) (internal quotation marks omitted).

¶ 16. If the meaning of the statutory language is plain, the statute is applied according to the plain

meaning of the terms used. *Id.,* ¶ 15. However, if a statute is "capable of being understood by reasonably well-informed persons in two or more senses, then the statute is ambiguous." *Id.* (quoting *Kalal,* 271 Wis. 2d 633, ¶ 47) (internal quotation marks and alterations omitted). "When a statute is ambiguous, we may consult extrinsic sources to discern its meaning. While extrinsic sources are usually not consulted if the statutory language bears a plain meaning, we nevertheless may consult extrinsic sources to confirm or verify a plain-meaning interpretation." *Id.* (quoting *Kalal,* 271 Wis. 2d 633, ¶¶ 48, 50–51) (internal quotation marks and citations omitted).

¶ 17. When we review an agency's interpretation of statutes, our process of statutory interpretation is modified slightly. We have historically afforded varying levels of deference to agencies' interpretations of statutes, depending on an agency's relative expertise in the area of law and the reasonableness of its interpretation. *See Cnty. of Dane,* 315 Wis. 2d 293, ¶¶ 14–15. To determine whether the agency's interpretation of a statute is reasonable, we review the statute independently from the agency's interpretation, thereby "embrac[ing] a major responsibility of the judicial branch of government, deciding what statutes mean." *Id.,* ¶ 19 (citation and internal quotation marks omitted).

¶ 18. Deference to agency decisions is based in part on the provisions of Wis. Stat. § 227.57, governing judicial review of agency decisions. Under § 227.57(2), a court "shall affirm the agency's action" "[u]nless the court finds a ground for setting aside, modifying, remanding or ordering agency action." Specifically, courts are directed to accord due weight to "the experience,

technical competence, and specialized knowledge of the agency involved." § 227.57(10).

¶ 19. Courts reviewing agency interpretations of statutes typically afford such interpretations one of three levels of deference: great weight, due weight, or no deference, also referred to as de novo review. *Cnty. of Dane,* 315 Wis. 2d 293, ¶ 15. The level of deference accorded an agency's interpretation of a statute is influenced by multiple considerations, "including the extent to which the administrative agency's experience, technical competence, and specialized knowledge aid the agency in its interpretation and application of the statute and the comparative institutional capabilities and qualifications of the court and the administrative agency." *Clean Wis., Inc. v. Pub. Serv. Comm'n of Wis.,* 2005 WI 93, ¶ 38, 282 Wis. 2d 250, 700 N.W.2d 768 (quoting *Hutson v. Wis. Pers. Comm'n,* 2003 WI 97, ¶ 31, 263 Wis. 2d 612, 665 N.W.2d 212) (internal quotation marks and alterations omitted).

¶ 20. The highest level of deference, great weight, is reserved for an agency's interpretation of a statute in which four criteria are met. *See id.,* ¶ 39. Great weight deference is appropriate where:

> (1) the agency was charged by the legislature with the duty of administering the statute; (2) the interpretation of the statute is one of long-standing; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will provide uniformity and consistency in the application of the statute.

*Id.,* ¶ 39 (quoting *Hutson,* 263 Wis. 2d 612, ¶ 32) (internal quotation marks and alterations omitted).

¶ 21. For a court to accord great weight deference, the agency need not have examined the statute under the precise facts at issue; instead, where the agency has substantial experience interpreting the statutory scheme at issue, great weight deference may be appropriate when the other criteria listed above are met. *Id.,* ¶ 40. Where a reviewing court determines that great weight deference is proper, the court will uphold the agency's interpretation if the interpretation is reasonable, even if a more reasonable interpretation exists. *See id.,* ¶ 41.

¶ 22. The next level of deference, due weight, is warranted where an agency has some experience interpreting the statutory scheme at issue, but the agency has not developed any particular expertise interpreting and applying the statutes to place the agency in a better position than a reviewing court. *Responsible Use of Rural & Agric. Land (RURAL) v. Pub. Serv. Comm'n of Wis.,* 2000 WI 129, ¶ 24, 239 Wis. 2d 660, 619 N.W.2d 888. Accordingly, due weight deference is not based as much on the agency's experience interpreting a particular statutory scheme as it is on the legislature having granted the agency the authority to interpret the statutory scheme at issue. *Id.* (concluding that due weight deference was appropriate for PSC and DNR's decisions under CPCN law). A court affording due weight deference will uphold an agency's interpretation where such interpretation is reasonable, and where there is not a more reasonable interpretation. *Id.,* ¶¶ 24–25.

¶ 23. Under the lowest level of deference, no deference or de novo review, an agency's interpretation of a statute "is given no weight at all." *Clean Wis.,* 282

Wis. 2d 250, ¶ 43 (quoting *Hutson,* 263 Wis. 2d 612, ¶ 34) (internal quotation marks omitted). De novo review is appropriate where an interpretation of the statute is a first for the agency, or where the agency's interpretation of the statute has been so inconsistent that it provides a court no real guidance. *Id.*

¶ 24. In the present case, we conclude that the PSC's decision to apply the CA law to WPL's Bent Tree application, as well as the PSC's interpretation of the CPCN as applying exclusively to in-state facilities, are entitled to due weight deference. The PSC is charged with interpreting both the CA and the CPCN statutes, and its interpretations of both statutes under differing factual scenarios are of long standing. *See id.,* ¶ 253. In determining which statutory scheme to apply to Bent Tree, the PSC received comments from interested parties and weighed these comments against its own extensive experience in reviewing applications for construction of new electric generating facilities. In its Interim Order, the PSC examined the two statutes, as well as its own rules, Wis. Admin. Code ch. PSC 112, and noted that it had applied the CA law to out-of-state projects in the past.

¶ 25. The novelty of the question presented counsels in favor of applying due weight deference, rather than great weight. *See RURAL,* 239 Wis. 2d 660, ¶ 23. The question here cannot be decided based exclusively on the PSC's prior experience applying either the CA or the CPCN law; although the PSC has applied the CA law to applications for out-of-state facilities in the past, the PSC has never reviewed an application for an out-of-state facility that generates 100 megawatts or more, which is the trigger for the CPCN law. Nonetheless, based on the PSC's general expertise in reviewing

applications for electric generating facilities under both CA and CPCN laws and its legislatively granted authority in this area of law, we conclude that the PSC's decision to apply the CA rather than the CPCN law to WPL's Bent Tree application is entitled to due weight deference. Accordingly, we will uphold the PSC's interpretation if it is reasonable, unless we conclude that another more reasonable interpretation exists.

B. Wisconsin Stat. § 196.49 and Wis. Stat. § 196.491

¶ 26. Wisconsin Stat. ch. 196 is entitled "Regulation of Public Utilities." The prevailing purpose of regulation under ch. 196 is to ensure that public utilities' actions are in the public interest. *See, e.g., Wis. Power & Light Co. v. Pub. Serv. Comm'n (WPL I)*, 45 Wis. 2d 253, 259, 172 N.W.2d 639 (1969); *GTE N. Inc. v. Pub. Serv. Comm'n of Wis.*, 176 Wis. 2d 559, 568, 500 N.W.2d 284 (1993); *Wis. Power & Light Co. v. Pub. Serv. Comm'n of Wis. (WPL II)*, 148 Wis. 2d 881, 891–92, 437 N.W.2d 888 (Ct. App. 1989). To facilitate this purpose, the legislature has provided that the PSC "has jurisdiction to supervise and regulate every public utility in this state and to do all things necessary and convenient to its jurisdiction." Wis. Stat. § 196.02(1). The legislature has also authorized the PSC to "adopt reasonable rules to govern its proceedings and to regulate the mode and manner of all inspections, tests, audits, investigations and hearings." § 196.02(3). The PSC has exercised this authority, and enacted Wis. Admin. Code ch. PSC 112, which sets forth procedures that electric public utilities must follow when undertaking certain construction projects.

¶ 27. "Public utility" is a term of art for purposes of ch. 196, and is defined in Wis. Stat. § 196.01(5)(a) to mean:

> every corporation, company, individual, association . . . and every sanitary district, town, village or city that may own, operate, manage or control any toll bridge or all or any part of a plant or equipment, within the state, for the production, transmission, delivery or furnishing of heat, light, water or power either directly or indirectly to or for the public.

Although this definition establishes which entities qualify as public utilities, Wis. Stat. § 196.49(1)(am) shows that further certification may be necessary for such entities to actually transact business as a public utility. Under that provision, any "public utility" that intends to provide heat, light, water, or power must "obtain[] a certificate from the [PSC] authorizing it to transact public utility business." § 196.49(1)(am).

¶ 28. In addition, under the CA law, a public utility may be required to obtain further certification from the PSC to begin any construction, installation, extension, improvement, or addition to any plant, equipment, property, apparatus, or facility. *See* Wis. Stat. § 196.49(2). Prior to the PSC certifying a utility's proposed project, the PSC may also demand that the utility demonstrate that public convenience and necessity require the project. *See* § 196.49(3)(b).

> The commission may refuse to certify a project if it appears that the completion of the project will do any of the following:
>
> 1. Substantially impair the efficiency of the service of the public utility.
>
> 2. Provide facilities unreasonably in excess of the probable future requirements.
>
> 3. When placed in operation, add to the cost of service without proportionately increasing the value or available quantity of service unless the public utility

593

> waives consideration by the commission, in the fixation of rates, of such consequent increase of cost of service.

*Id.*

¶ 29. In Wis. Admin. Code ch. PSC 112, the PSC has established a more particularized procedure for reviewing public utilities' applications to construct electric generating facilities. For example, the PSC has specified in Wis. Admin. Code § PSC 112.05(1) that "[n]o electric utility may begin construction, install or place in operation" various types of facilities, listed thereunder, without PSC approval. The PSC also established threshold amounts that trigger the mandatory application and certification requirements. The threshold amount depends on the proposed project's expected cost in relation to the applicant's prior revenues, such that PSC review and approval is required if a project's cost exceeds a utility's specific threshold amount. § PSC 112.05(1) & (3)(a).

¶ 30. To secure PSC approval, a public utility must demonstrate that its proposed project complies with the requirements that the PSC has established under Wis. Admin. Code § PSC 112.06(1m). These requirements are extensive, and include demonstrating the overall purpose and necessity of the project, as well as providing specific descriptions of the project's design, construction schedule, environmental impact, effect on the quality and reliability of utility service, and compliance with energy efficiency standards. § PSC 112.06(1m).

¶ 31. Finally, the PSC has provided that if "upon consideration of the application, together with any supplemental information and objections, the commission finds that the public convenience and necessity require the project as proposed and the project complies

with s. 196.49(3)(b), Stats., the commission may authorize the project without public hearing but with modifications and conditions it considers necessary." Wis. Admin. Code § PSC 112.07(1). If the PSC is not able to determine, based solely on the application and supporting materials, that public convenience and necessity require the project, the agency "shall hold a public hearing on the application." § PSC 112.07(2).

¶ 32. Accordingly, although the CA statute simply affords the PSC discretion to consider certain factors in determining whether a project serves the public convenience and necessity, *see* Wis. Stat. § 196.49(3)(b), the PSC has crafted a thorough and mandatory procedure by which it evaluates applications to construct electric generating facilities under the CA law.

¶ 33. The other relevant statutory scheme under which the PSC is authorized to review and approve applications for construction of electric generating facilities is the CPCN law, Wis. Stat. § 196.491(3). Under the CPCN law, or "Plant Siting Law," as it has been called, *see Clean Wis.,* 282 Wis. 2d 250, ¶ 16, the PSC is required to review applications for certain large-scale electric generating facilities to determine whether the facility serves public convenience and necessity, based on the PSC's consideration of numerous factors, many of which are site-specific to the proposed facility. *See* § 196.491(3)(d)3., 4., 6.

¶ 34. As a threshold matter, the CPCN law's requirements are not implicated unless the proposed project meets the statutory definition of a "facility." Wis. Stat. § 196.491(3)(a)1. As relevant here, "facility" is defined as "electric generating equipment and associated facilities designed for nominal operation at a capacity of 100 megawatts or more." § 196.491(1)(e), (g). Therefore, the trigger for the review procedures

under the CPCN law is the generating capacity of a facility, not the facility's cost. Additionally, whereas the CA law applies to "public utilities," the CPCN law applies to "persons," and provides that "no person may commence the construction of a facility unless the person has applied for and received a certificate of public convenience and necessity under [the CPCN procedures]."[5] § 196.491(3)(a)1.

¶ 35. Upon receiving an application for the construction of a "facility" under the CPCN law, the PSC "shall hold a public hearing . . . in the area affected," in accordance with the contested case procedures set forth in Wis. Stat. § 227.44. Wis. Stat. § 196.491(3)(b). After reviewing any contested case proceedings, as well as the application materials, the PSC is required to determine, prior to issuing a CPCN, that the proposed facility complies with numerous factors. Some of the relevant factors that the PSC must consider include whether:

> 2. The proposed facility satisfies the reasonable needs of the public for an adequate supply of electric energy. . . .
>
> 3. The design and location or route is in the public interest considering alternative sources of supply, alternative locations or routes, individual hardships, engineering, economic, safety, reliability and environmental factors . . . .
>
> [Provisions relating exclusively to high-voltage transmission lines omitted]
>
> 4. The proposed facility will not have undue adverse impact on other environmental values such as, but not limited to, ecological balance, public health and

---

[5] Under Wis. Stat. § 990.01(26), "person" includes "all partnerships, associations and bodies politic or corporate."

welfare, historic sites, geological formations, the aesthetics of land and water and recreational use. . . .

5. The proposed facility complies with the criteria under s. 196.49(3)(b) if the application is by a public utility as defined in s. 196.01.

6. The proposed facility will not unreasonably interfere with the orderly land use and development plans for the area involved.

[Provision governing wholesale providers omitted]

8. For a large electric generating facility, brownfields, as defined in s. 560.13(1)(a),[6] are used to the extent practicable.

Wis. Stat. § 196.491(3)(d).

¶ 36. In addition, the law also establishes time limits within which materials must be submitted by the applicant and decided upon by the PSC and the Wisconsin Department of Natural Resources (DNR). First, at least 60 days prior to the filing of an application for a CPCN, the applicant must provide the DNR with an engineering plan for the proposed facility, including the expected effects of the facility on air and water quality, wetlands, and other natural resources. Wis. Stat. § 196.491(3)(a)3.a. Within 30 days, the DNR is required to inform the applicant of any permits that will be necessary for the facility, after which the applicant has 20 days to apply for such permits.[7] *Id.*

¶ 37. Within ten days after receipt of a CPCN application, the PSC must send copies of the application

---

[6] Wisconsin Stat. § 560.13(1)(a) was renumbered as Wis. Stat. § 238.13(1)(a) by 2011 Wis. Act 32, § 3341.

[7] The DNR application procedure continues parallel to the PSC application, with further timing requirements not relevant here. *See* Wis. Stat. § 196.491(3)(a)3.b.

to the clerk of each municipality in which the proposed facility will be located, and to the main public library for the county where the facility will be located. Wis. Stat. § 196.491(3)(a)1. Next, within 30 days of receipt of an application, the PSC must determine whether the application is complete, or must notify the applicant of any additional filings that are required. § 196.491(3)(a)2. If the PSC fails to make a completeness determination within 30 days, the application will be deemed complete. *Id.* After the application is complete, the PSC must take final action on the application within 180 days,[8] or the PSC will be considered as having issued a CPCN for the proposed facility. § 196.491(3)(g).

¶ 38. Finally, the CPCN law also includes provisions intended to preempt local ordinances that would prohibit applicants from engaging in activities that the PSC has allowed under the CPCN law. In particular, Wis. Stat. § 196.491(2r) preempts any local ordinance that would prohibit or restrict testing activities intended to determine the suitability of a site for facility placement. Moreover, when the PSC grants a CPCN for a facility, § 196.491(3)(i) provides that any local ordinances precluding or inhibiting construction may be disregarded.

C. Application of CA and
CPCN Laws to Out-of-State Projects

¶ 39. In determining whether the PSC reasonably construed the CA and the CPCN laws as applied to out-of-state facilities, we begin with the language of

---

[8] Exception may be made if the PSC petitions the Dane County Circuit Court for an extension. Wis. Stat. § 196.491(3)(g). Upon a showing of good cause, the court may grant an extension for a maximum of 180 days more. Then, too, if the PSC fails to act on the application, the CPCN will be deemed to have been granted for the proposed facility. *Id.*

those statutes. Neither Wis. Stat. § 196.49 nor Wis. Stat. § 196.491 explicitly states whether the law applies to out-of-state facilities. Notwithstanding the omission of an explicit statement in this regard, the scope of each law is made plain by the language, purpose, and context of the laws. Therefore, we conclude that neither statute is ambiguous as to out-of-state application. Reading these statutes in context, we hold that the PSC reasonably concluded: (1) that the CA law controlled WPL's application to construct an out-of-state electric generating facility, and (2) that the CPCN law applies exclusively to in-state facilities. We examine each of these conclusions in turn.

¶ 40. The PSC determined that the CA law could validly be applied to WPL's out-of-state project, based largely on the language of the CA law, Wis. Stat. § 196.49, and its corresponding administrative rules, Wis. Admin. Code ch. PSC 112. First, the language of the CA law plainly governs WPL's application to construct Bent Tree. Under Wis. Stat. ch. 196, WPL is a statutory "public utility," and is subject to regulation under the CA law, based on WPL's intention to construct a new electric generating facility. That is, as a public utility, WPL is subject to the CA law's mandate that any public utility seeking to construct a new facility must comply with any applicable rules or orders of the PSC. *See* § 196.49(2) and (3). As relevant here, the PSC's rules required that WPL submit an application to the PSC, including a comprehensive description of the project, as well as sufficient facts to demonstrate the purpose and necessity of such project. Wis. Admin. Code §§ PSC 112.05–.06.

¶ 41. WPL complied with the mandates of the CA law. Prior to beginning construction of Bent Tree, WPL submitted an application to the PSC, notifying the agency of WPL's project and providing information

relating to all of the categories of required materials under Wis. Admin. Code § PSC 112.06(1m). Accordingly, as an application by a public utility to commence construction of a new electric generating facility, WPL's Bent Tree application was subject to the requirements of Wis. Stat. § 196.49(2) and (3), as well as the mandatory review procedures set forth in Wis. Admin. Code §§ PSC 112.05–.07.

¶ 42. Moreover, because the CA law governs "public utilities," nothing in the law precludes its application to public utilities seeking to construct out-of-state facilities. Under Wis. Stat. § 196.01(5)(a) and Wis. Stat. § 196.49(1)(am), every "public utility" has availed itself of Wisconsin's regulatory jurisdiction by obtaining authorization to engage in public utility business. Therefore, when the PSC reviews an application under the CA law, it is a *statutory entity* that is being regulated, not a *person's activity* of constructing a facility, as is the case under the CPCN law. In this sense, regulating a public utility is comparable to regulating other statutorily ordained entities whose licensure or accreditation may be affected by the entities' activities, even out of state. *Cf., e.g.,* Wis. Stat. § 125.12(2)(ag)5. and 5m. (license for distribution of alcohol subject to revocation upon showing that licensee was convicted of certain offenses in another state); Wis. Stat. § 343.03(5) (where automobile license applicant is licensed in another state, DOT "shall obtain information on the applicant's license status with the state of licensure before issuing a license"). Accordingly, the PSC reasonably concluded that WPL's Bent Tree application was subject to review under the CA law.

¶ 43. Notwithstanding the applicability of the CA law, WIEG contends that because WPL's application

600

was for a facility generating more than 100 megawatts, the plain language of the CPCN law required the PSC to review WPL's application under the CPCN law, exclusively. However, based on the language and scope of the CPCN law, the PSC determined that the CPCN law could not reasonably be applied to Bent Tree. We now turn to the application of the CPCN law to out-of-state facilities, and conclude that the PSC reasonably construed the CPCN law as inapplicable to WPL's Bent Tree facility.

¶ 44. Our conclusion that the PSC reasonably interpreted the CPCN as applying exclusively to in-state facilities rests on three interrelated premises: (1) the CPCN's regulation of "persons" demonstrates that that law does not contemplate regulation of out-of-state activities; (2) the purpose of the CPCN law, to require the PSC to engage in thorough review of site-specific factors, does not reasonably accord with out-of-state activities; and (3) none of the options that could be followed to make the CPCN more reasonable as applied to out-of-state facilities is as reasonable as construing the law to apply exclusively to in-state facilities.

¶ 45. First, the CPCN law regulates "persons" by providing that "no person may commence the construction of a facility unless the person has applied for and received a [CPCN] under this subsection." Wis. Stat. § 196.491(3)(a)1. If this provision were interpreted to apply to out-of-state activities, it could be read to prohibit a person in another state from constructing a 100–megawatt electric generating facility outside Wisconsin, unless the person complied with the CPCN law's application and review procedures. For example, if read to apply to out-of-state persons and facilities, the CPCN law's plain language could prohibit a person in Texas

from constructing a "facility" like Bent Tree in California, unless the person complied with all the factors listed in § 196.491(3)(d), and obtained permits from the Wisconsin DNR, under § 196.491(3)(a)3.a.

¶ 46. Given this result, we cannot ignore the State of Wisconsin's lack of authority to regulate a person's activities in another state.[9] As applied to "persons," "[t]he general rule, unquestionably, is that laws of a state have no extraterritorial effect." *State v. Mueller*, 44 Wis. 2d 387, 391, 171 N.W.2d 414 (1969); *see State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 421–22 (2003) ("A State does not acquire power or supervision over the internal affairs of another State merely because the welfare and health of its own citizens may be affected . . . .") (quoting *Bigelow v. Virginia*, 421 U.S. 809, 824 (1975)); *see also K-S Pharmacies, Inc. v. Am. Home Prods. Corp.*, 962 F.2d 728, 730 (7th Cir. 1992) (discussing "presumption of exclu-

[9] Under the CPCN, "persons" might be construed as including only those persons who are located in Wisconsin during the construction of facilities outside the state, thereby making the CPCN applicable exclusively to in-state "persons" subject to the State's regulatory authority. Even disregarding that such construction would still regulate out-of-state activity, such reading suggests a distinction between "types" of persons. For example, a partnership, which is considered a "person" under Wis. Stat. § 990.01(26), and which could potentially be understood to "remain" in Wisconsin while its out-of-state facility was constructed, might be treated differently than a natural person who is a resident of Wisconsin, but who might physically leave the state entirely to construct a "facility" out of state, thereby removing him or her from Wisconsin's regulatory authority. The statutory language does not support any such distinction between "types" of "persons," and we therefore decline to adopt such an interpretation.

sive domestic application" based on states' lack of "any . . . power to reach outside their borders"). Although limited exceptions to this general rule might exist, explicitly prohibiting "persons" from engaging in activities outside the state does not fall within one of those exceptions. *See Mueller,* 44 Wis. 2d at 393. Accordingly, the language and context of the CPCN law strongly suggest that its regulatory scope—persons engaging in particular activities—is wholly intrastate.[10]

¶ 47. Next, the purposes of the CA and the CPCN laws further suggest that the CA law may reasonably be applied to a public utility's application for an out-of-state facility, but that the PSC reasonably concluded that the CPCN law applied exclusively to in-state facilities. We have noted that a prevailing purpose of Wisconsin public utility laws is to protect the consuming public, i.e., ratepayers. *See WPL I,* 45 Wis. 2d at 259. This purpose is manifest in the authority granted to the PSC to consider ratepayers' interests in reviewing any proposed projects under the CA statute, Wis. Stat. § 196.49(3)(b). Under the CA statute, the PSC may refuse to authorize construction projects that would impair utility efficiency, provide unnecessary facilities,

---

[10] The dissent misperceives the import of *State v. Mueller,* 44 Wis. 2d 387, 171 N.W.2d 414 (1969), when it asserts that *Mueller* stands for the proposition that the State may "regulate the out–of-state actions of 'persons.' " Dissent, ¶ 69. Mueller, who was a Wisconsin resident, was not sanctioned for marrying out of state; rather, he was sanctioned because, as a Wisconsin resident required to comply with Wisconsin law, he had failed to obtain an *in-state* court order before marriage when child support was due in Wisconsin. *Mueller,* 44 Wis. 2d at 395. *Mueller* provides no support for extraterritorial application of the laws of Wisconsin to persons beyond the state's physical boundaries.

or increase cost without a corresponding increase in value. § 196.49(3)(b). When these considerations are construed in pari materia with the mandatory application and review provisions under Wis. Admin. Code §§ PSC 112.05–.07, it is evident that the purpose of the CA law and its corresponding agency rules is to protect ratepayers by affording comprehensive review of proposed utility projects. *See WPL II,* 148 Wis. 2d at 892–93.

¶ 48. While the CPCN law also protects ratepayers, that is not the law's central focus. Rather, as demonstrated by the CPCN law's provisions, its central focus is to require the PSC to thoroughly and efficiently review applications for large-scale facilities to ensure that such facilities will comply with each of the factors listed under Wis. Stat. § 196.491(3)(d), many of which involve site-specific considerations for the facility's proposed locale.[11] *See Clean Wis.,* 282 Wis. 2d 250, ¶ 87 (noting "streamlined certificate application process" under CPCN law). For example, when evaluating an appli-

---

[11] The PSC must also consider whether "brownfields . . . are used to the extent practicable." Wis. Stat. § 196.491(3)(d)8.; *see* Wis. Stat. § 560.13(1)(a) (renumbered as Wis. Stat. § 238.13(1)(a) by 2011 Wis. Act 32, § 3341) (defining brownfields as "abandoned, idle or underused industrial or commercial facilities or sites, the expansion or redevelopment of which is adversely affected by actual or perceived environmental contamination"); *see also* Scott W. Brunner, Note, *Sharing the Green: Reformatting Wisconsin's Forgotten Green Space Grant with a Public-Private Partnership Design,* 95 Marq. L. Rev. 305, 309–19 (2011) (discussing local benefits of brownfield reclamation). WIEG points to the identical requirement in the CA law in support of its argument that the CA law is no more reasonable when applied to out-of-state facilities than is the CPCN. We conclude, however, that the qualification, "to the extent practicable," affords the PSC sufficient discretion to determine, in the context of an application for an out-of-state facility, whether the use of brownfields, either in Wisconsin or out of state, is "practicable."

cation for a CPCN, the PSC must consider such site-specific factors as the "design and location" of the proposed facility, protection of "scenic beauty," minimization of "environmental impacts," protection of land use plans "for the area involved," and "environmental values such as, but not limited to, ecological balance, public health and welfare, historic sites, geological formations, the aesthetics of land and water and recreational use." § 196.491(3)(d)3., 3m., 3r., 4., 6. Indeed, soon after its passage, we referred to the CPCN law as the "plant siting bill," referring to the law's focus on the particular characteristics of the proposed facility's site. *Falkner v. N. States Power Co.*, 75 Wis. 2d 116, 145, 248 N.W.2d 885 (1977); *see also Clean Wis.*, 282 Wis. 2d 250, ¶¶ 16–17.

¶ 49. The CPCN law also affords ratepayer protections, but it does so by expressly incorporating the CA law wholesale.[12] *See* Wis. Stat. § 196.491(3)(d)5. Therefore, we are not persuaded by WIEG's argument that the CPCN must be applied here because that law's mandatory hearing procedure better protects ratepayers.[13] First, Wis. Admin. Code §§ PSC 112.05–.07 estab-

---

[12] The dissent repeatedly asserts that the CPCN provides "greater ratepayer protections." Dissent, ¶¶ 67, 79, 81, and 87. The dissent cites incomplete authority for its repetitive assertion. It summarily concludes that because the CPCN requires a hearing and the CA does not, the CPCN must provide "greater ratepayer protections." This contention ignores the facts of this case in which a public hearing was held. It also ignores the expertise of the PSC members and their commitment to carefully consider the applications for electric generating facility construction, which careful consideration included holding a public hearing.

[13] We note that neither the CA law nor the CPCN law directly governs ratemaking per se. Instead, the PSC's determination of rates occurs under a separate provision, Wis. Stat. § 196.20(1), which states that "No change may be made by any

lish mandatory procedures by which the PSC must review an application for a CA. Accordingly, although the PSC might not require a contested case hearing in every instance, the PSC has imposed upon itself a duty to comprehensively review numerous factors relevant to the protection of ratepayers' interests. *See* Wis. Admin. Code §§ PSC 112.06(1m), .07. Failure to act reasonably upon such information would be an erroneous exercise of the agency's discretion. *See Bd. of Regents of the Univ. of Wis. Sys. v. Wis. Pers. Comm'n,* 2002 WI 79, ¶ 26, 254 Wis. 2d 148, 646 N.W.2d 759. Second, and more importantly, because the purpose of the CPCN law is to require more thorough review of local site-specific factors, and not primarily greater ratepayer protections, as WIEG contends,[14] WIEG's focus on ratepayer protection under the CPCN law is misplaced.[15]

public utility in its [rate] schedules except by filing the change as proposed with the commission." Here, WPL moved to reopen the Bent Tree docket *after* the project had been certified and construction commenced. It was in that separate proceeding, which included a contested case hearing, that the PSC allowed a rate increase for WPL's customers.

[14] Primarily, WIEG argues that the large, 100–megawatt facilities that trigger the CPCN law are more expensive and, therefore, demand greater scrutiny to protect ratepayers. Cost, however, is not the criterion that the legislature adopted for the CPCN. Indeed, the PSC has reviewed applications under the CA law for facilities almost double Bent Tree's estimated cost of $497 million. *See, e.g.,* PSC Docket No. 6630–CE-299, Certificate and Order, at 1, 15, Application of Wisconsin Electric Power Company for Authority to Construct Wet Flue Gas Desulfurization and Selective Catalytic Reduction Facilities and Associated Equipment for Control of Sulfur Dioxide and Nitrogen Oxide Emissions at its Oak Creek Power Plant Units 5, 6, 7, and 8, http://psc.wi.gov/apps35/ERF_view/viewdoc.aspx?docid=97457 (certifying $830 million construction project under CA law).

[15] Similarly, the dissent sets forth a chart listing purported

¶ 50. The third premise supporting our conclusion that the PSC reasonably construed the CPCN law is that none of the options for modifying the CPCN law to make the law applicable to out-of-state facilities is as reasonable as construing the law as applying exclusively to in-state facilities. To validly apply out of state, certain statutory provisions that would preempt local laws would have to be severed from the CPCN law. Additionally, other provisions of the law directing the PSC and the DNR to review out-of-state factors might be validly applied, but doing so would not directly benefit the State of Wisconsin or its citizens. Accordingly, applying those provisions would lead to unreasonable or absurd results, but disregarding them would undermine the CPCN law's purpose of requiring thorough review of those site-specific factors.

contrasts in ratepayer protections between the CA and CPCN review processes. The dissent's chart, however, proceeds from the incorrect premise that the central purpose of the CPCN law is to protect ratepayers. As discussed above, the central purpose of the CPCN law is to ensure that the PSC gives due consideration to the environmental impact of large-scale facilities on the locales in which they will be sited. Moreover, while the dissent's chart lists mandatory findings that the PSC must make when approving large-scale facilities, the dissent does not provide statutory support for its conclusion that the legislature intended the CPCN law to be a "ratepayer protection" law, rather than, as this court recently recognized, a "plant siting law." *See Clean Wis., Inc. v. Pub. Serv. Comm'n of Wis.*, 2005 WI 93, ¶ 16, 282 Wis. 2d 250, 700 N.W.2d 768. Furthermore, and as discussed above, the review procedures that the PSC has mandated under the CA law require the agency to consider the same information under that law as the legislature has required the agency to consider under the CPCN law. *See generally* Wis. Admin. Code §§ PSC 112.05–.07 (setting forth information that CA applicants must submit and which the PSC must consider).

¶ 51. In addition, the CPCN law includes numerous provisions that could involve the PSC and the DNR in out-of-state activities. For example, the PSC is required to send copies of a CPCN application to county clerks and local libraries in the area of the proposed facility, Wis. Stat. § 196.491(3)(a)1., and the PSC must hold a contested case hearing "in the area affected" by a proposed facility, § 196.491(3)(b). Also, applicants must inform the DNR of the facility's expected impact on local natural resources, and the DNR is then required to notify the applicant of those permits that will likely be required for the facility. § 196.491(3)(a)3.a. And, as discussed, the PSC must review a proposed facility's impact on multiple site-specific factors. § 196.491(3)(d)3., 4., 6.

¶ 52. It is possible that these particular provisions would not necessarily require the PSC or the DNR to exercise extraterritorial control, in that the agencies might be able to consider relevant factors or mail materials to foreign depositories without trenching upon the exclusive regulatory authority of another state. However, requiring such actions by Wisconsin agencies "would burden local officials and sow confusion without serving any legitimate Wisconsin purpose." (PSC Interim Order at 6–7). More importantly, if a Wisconsin agency did prohibit or attempt to condition a person's construction of a facility in another state based on any of these factors, the agency's action could be construed as an attempt at extraterritorial regulation. Such interjection of authority into another state could undermine fundamental principles of federalism. *See State Farm Mut.,* 538 U.S. at 421–22; *Mueller,* 44 Wis. 2d at 391.

¶ 53. Additionally, under the CPCN law, the PSC is directed to consider "public convenience and necessity," but it is not clear from the language of the statute which "public" would properly be considered for an

out-of-state facility: residents of Wisconsin or residents of the facility's host state? If "the public" is construed to mean Wisconsin residents, it seems that a foreign facility would have little to no bearing on those residents' convenience and necessity, especially if the facility was not providing power to Wisconsin. Alternatively, construing "the public" to mean residents of a foreign state would impose an absurd requirement on the PSC: determining what is convenient and necessary for another state's residents.

¶ 54. Furthermore, two provisions of the CPCN law expressly preempt any local ordinance that would conflict with PSC decisions. *See* Wis. Stat. § 196.491(2r) and (3)(i). If applied out of Wisconsin, these provisions would require precisely the type of extraterritorial assertion of Wisconsin laws that we generally have forbidden. *See Mueller,* 44 Wis. 2d at 391.

¶ 55. To save the CPCN law from invalidation as applied to out-of-state facilities, WIEG urges that we sever those provisions that could not validly be applied to such facilities. Specifically, WIEG asks that we apply Wis. Stat. § 990.001(11), which provides that "[t]he provisions of the statutes are severable. . . . If any provision of the statutes . . . is invalid, . . . such invalidity shall not affect other provisions or applications which can be given effect without the invalid provision or application."

¶ 56. We have stated that severing invalid provisions is favored where doing so would not frustrate the purpose of a law. *See State v. Janssen,* 219 Wis. 2d 362, 378–79, 580 N.W.2d 260 (1998). Here, however, it seems that any severance would frustrate a significant purpose of the CPCN law, which is to require the PSC to consider multiple site-specific factors in determining whether a facility should be sited at a particular loca-

tion. We, therefore, decline to engage in severance as a means to save the CPCN law for application out of Wisconsin.

¶ 57. Alternatively, if we decline to sever those provisions and the CPCN law were applied to out-of-state facilities, the PSC would be required to undertake unreasonable, or even absurd, actions that would have little, if any, direct benefit on the State of Wisconsin or its residents. We construe statutes whenever possible to avoid unreasonable or absurd results. *See Watton,* 311 Wis. 2d 52, ¶ 14. Construing the CPCN to require, for example, that the PSC mail copies of applications to Minnesota libraries or thoroughly consider the impact of a Minnesota facility on the local ecology of Minnesota would be unreasonable and absurd.

¶ 58. Any unreasonable or absurd results are avoided by the PSC's construction of the CPCN law as applying exclusively to facilities in this state. As the PSC represented to us, "[e]ither the Wisconsin Legislature enacted a law that requires the PSC to ignore several of the law's provisions or the Wisconsin Legislature enacted a law whose every word has meaning, but applies only to in-state projects."

¶ 59. Accordingly, from the foregoing, we conclude that the PSC's interpretations of the CA and CPCN laws are reasonable, and that there is not a more reasonable interpretation of those laws.

### III. CONCLUSION

¶ 60. Applying due weight deference, we conclude that the PSC's interpretation of the CPCN law as applying exclusively to in-state facilities and its decision to analyze WPL's application under the CA law were reasonable, and that there is not a more reasonable interpretation of the laws. The PSC examined the language, purpose, and context of both the CA and the

CPCN laws and concluded that the CA law governed WPL's application to construct an out-of-state facility. Additionally, the PSC concluded that applying the CPCN law to an out-of-state facility would exceed the jurisdiction of Wisconsin laws and lead to unreasonable results. Based on our review of these statutes and the corresponding administrative rules, we conclude that there is not a more reasonable interpretation of the CA and the CPCN laws. Accordingly, we affirm the circuit court's order, which affirmed the PSC's November 6, 2008, Interim Order in PSC Docket No. 6680–CE–173.

*By the Court.*—The order of the circuit court is affirmed.

¶ 61. ANN WALSH BRADLEY, J. (*dissenting*). The reason that the Public Service Commission (PSC) can regulate the construction of the Bent Tree Wind Farm, even though the facility is located across the state border, has nothing to do with the majority's distinction between "persons" and "public utilities." Rather, the reason that the PSC can regulate the construction of this 200–megawatt out-of-state facility is that it is a public utility that will generate electricity solely for Wisconsin consumers and the $497 million construction costs as well as the operational costs will be paid exclusively by ratepayers in Wisconsin.

¶ 62. Like the majority, I recognize that both statutes are silent on their application to out-of-state facilities. Neither the Certificate of Authority (CA) statute nor the Certificate of Public Convenience and Necessity (CPCN) statute is perfectly tailored to address the PSC's regulation of an out-of-state facility. I part ways with the majority, however, when it transforms that silence into an unambiguous directive that erodes the legislative policy of providing protection for Wisconsin ratepayers.

611

¶ 63. I conclude that the protections found in the CPCN statute better comport with the legislative policy of protecting Wisconsin ratepayers, and that the PSC should have applied that statute to this large facility. Because the majority's interpretation unreasonably seizes upon a distinction between persons and public utilities, concludes that it is a clear indicator of unambiguous legislative intent, and ignores the reason for regulating the construction of these facilities, I respectfully dissent.

I

¶ 64. The majority recognizes that both statutes are silent on their application to out-of-state facilities. Majority op., ¶ 39. It implicitly acknowledges that neither the CA statute nor the CPCN statute is perfectly tailored to address the PSC's regulation of an out-of-state facility. *See id.,* ¶ 44. Nevertheless, it contends that the "the CPCN [law applies] exclusively to in-state facilities." *Id.* This contention is rooted in a distinction between the CA statute that regulates "public utilities" and the CPCN law that regulates "persons," as well as the "general rule" that a state cannot "prohibit[] 'persons' from engaging in activities outside the state." *Id.,* ¶ 46.

¶ 65. The majority asserts that the PSC can review an application for an out-of-state facility submitted by a public utility because "it is a statutory entity that is being regulated, not a person's activity of constructing a facility, as is the case under the CPCN law." *Id.,* ¶ 42 (emphasis omitted). However, it asserts, "the CPCN's regulation of 'persons' demonstrates that that law does not contemplate regulation of out-of-state activities." *Id.,* ¶ 44.

¶ 66. The majority further posits that if the CPCN were interpreted "to apply to out-of-state persons and facilities, the CPCN's law's plain language could prohibit

a person in Texas from constructing a 'facility' like Bent Tree in California, unless the person complied with all the factors listed in [the CPCN] and obtained permits from the Wisconsin DNR." *Id.,* ¶ 45. Ultimately, the majority contends that even though the statutes are silent on the issue, "neither statute is ambiguous as to out-of-state application." Majority op., ¶ 39. It concludes that the CA statue alone regulates out-of-state facilities.

## II

¶ 67. Given that the CPCN statute does not specify whether it can be applied to an out-of-state facility that generates more than 100 megawatts of electricity for Wisconsin consumers, the court is required to make a policy choice. It can apply the CA statute to this "large electric generating facility," meaning that it must sacrifice those portions of the CPCN statute that are intended to provide greater protection to Wisconsin ratepayers. Alternatively, it can apply the greater ratepayer protections in the CPCN but sever those site-specific provisions of that statute that cannot be applied to out-of-state facilities.

¶ 68. Rather than acknowledging that it is making a policy choice, the majority infers legislative intent from a distinction between "persons" and "public utilities." Because it attaches such significance to this distinction, it fails to acknowledge the obvious—the reason that the PSC can regulate the Bent Tree facility is not only because it is constructed by a public utility, but also, because the energy it produces will be sold to Wisconsin consumers who will bear the cost of the facility.

¶ 69. The majority's inference about legislative intent is based on a generalization about principles of extraterritorial jurisdiction that is not established in the cases it cites. The majority cites *State v. Mueller,* 44 Wis. 2d 387, 171 N.W.2d 414 (1969) for the "general

rule" that a state cannot "prohibit[] 'persons' from engaging in activities outside the state." Majority op., ¶ 46. In fact, *Mueller* also stands for the opposite proposition that the state may, under some circumstances, regulate the out-of-state actions of "persons."

¶ 70. In that case, a statute required Wisconsin residents who owed child support from a prior marriage to obtain a court order prior to remarrying in Wisconsin or elsewhere. 44 Wis. 2d at 390. Mueller, who owed child support for the children of two prior marriages, remarried in Illinois without obtaining a court order. The court held that the statute was constitutional, even though it punished Mueller for an act that occurred outside the boundaries of the state. Additionally, the court acknowledged that "every state may, in the regulation of its own internal affairs, authorize certain acts to be done outside of its limits, and describe what effect they shall have within them." *Id.* at 393 (quoting *State ex rel. Chandler v. Main,* 16 Wis. 422 (1863).

¶ 71. Because the majority imputes undue weight to the distinction between "persons" and "public utilities," its interpretation of both statutes is unreasonable. It determines that under the CPCN statute, Wisconsin can never regulate an out-of-state facility built by a person that is not a public utility—even if the construction of the facility will be funded solely by Wisconsin ratepayers. Conversely, it concludes that under the CA statute, Wisconsin can regulate any facility built by a public utility registered in Wisconsin, even if that facility will have no effect on Wisconsin ratepayers.

¶ 72. At once, the majority construes the CPCN statute too narrowly and the CA statute too broadly. In this case, the reason that the PSC can regulate the "person" constructing the Bent Tree Wind Farm under the CPCN statute is straightforward. The electricity

produced by the out-of-state facility will be sold in Wisconsin to Wisconsin consumers. Wisconsin can regulate both persons and public utilities that build large electrical generating facilities when Wisconsin consumers will pay for the construction of the facility through their rates.

¶ 73. The majority's construction of the CA statute is likewise unreasonable. It contends that the CA law is applicable to an out-of-state facility because "every 'public utility' has availed itself of Wisconsin's regulatory jurisdiction," majority op., ¶ 42, and, "as a public utility, WPL is subject to the CA law's mandate that any public utility seeking to construct a new facility must comply with any applicable rules or orders of the PSC," *id.,* ¶ 40.

¶ 74. Under this interpretation, Wisconsin could regulate the construction of a facility that a Wisconsin public utility builds in Texas for the purpose of supplying power to California residents, even if that facility had no bearing on the rates paid by Wisconsin residents. What interest would Wisconsin have in regulating the construction of such a facility, unless the facility would somehow affect the cost or the services provided to Wisconsin residents?[1]

¶ 75. If the legislature made a determination that the CPCN should not be applied to out-of-state facilities,

---

[1] Wisconsin Admin. Code § PSC 112.05(2) provides that a Wisconsin electric utility must "notify" the PSC if it intends to construct a facility in another state the utility serves, and that it may be required to apply for approval "if a significant portion of the cost of the project will be allocated to Wisconsin for ratemaking purposes." Accordingly, under this regulation, a Wisconsin utility that proposes to build an out-of-state facility will not be required to secure the PSC's approval if a significant portion of the cost of the facility will not be allocated to Wisconsin ratepayers.

615

it had at its disposal a much more direct way to signal its intent than declaring that the statute applied to "persons." It could have, and I suspect would have, demonstrated this intent by declaring that "the CPCN statute will not be applied to out-of-state facilities." This, the legislature did not do.

¶ 76. Further, there is a much more logical explanation for the legislature's choice to use the word "persons" in the CPCN statute, and this alternative explanation is consistent with the basis of regulation set forth above. Wisconsin public utilities distribute electricity to Wisconsin consumers. However, not all electricity distributed by public utilities is generated by public utilities. Rather, a public utility can contract with an independent producer who will supply the public utility with electricity to sell to Wisconsin consumers.[2]

¶ 77. The legislature's selection of the term "persons" in the CPCN statute signals its intent to regulate not just public utilities, but the construction of facilities by independent producers that supply large quantities of electricity to public utilities in Wisconsin. It appears that the legislature made a policy choice to regulate the

_____

[2] The Commission's website provides the following explanation: "The electricity used in your home or place of business can come from many sources. The generating plant may be owned and operated by your local utility and located in or near your community. Or the power can be bought from another producer who may be located nearby, within your area of the state or in another state entirely. These generation owners could be another regulated utility or an Independent Power Producer (IPP). An IPP is an unregulated entity that produces electricity and sells it under contract or on the open market. . . . The PSC has statutory jurisdiction over the construction of generation plants of 100MW or larger." Electric Industry Overview, available at http://psc.wi.gov/utilityinfo/electric/index-electric.htm (last visited June 14, 2012).

construction of facilities by "persons" when the facilities will be large enough and produce enough electricity to influence the rates paid by Wisconsin consumers.

¶ 78. I recognize that some of the provisions of the CPCN statute cannot be applied to an out-of-state facility. It would not be wholly unreasonable to conclude that, because of this difficulty, it is easier to apply the CA statute and trust the Commission to appropriately exercise its discretion under the CA statute. However, it is unreasonable to seize upon a distinction between persons and public utilities, conclude that it is a clear indicator of unambiguous legislative intent, and ignore the reason for regulating the construction of these facilities—that Wisconsin ratepayers are on the hook for the improvements.[3]

¶ 79. Likewise, the majority ignores the statutory authority that provides for greater ratepayer protections under the CPCN statute. It chastises the dissent for providing "incomplete authority for its repetitive assertion" that the CPCN statute provides greater protections. Majority op., ¶ 49 n.12. The authority, however, is in plain sight.

---

[3] Additionally, the majority errs by applying due weight deference to the Commission's decision. De novo review is appropriate because the Commission has never been given occasion to determine whether it can apply the CPCN statute to an out-of-state facility, *see* majority op., ¶ 25, and because this is a question about the scope of the Commission's jurisdiction and authority, *see id.,* ¶¶ 6, 26.

Nevertheless, this is not a problem because there is no significant difference between due weight deference and de novo review. In both cases, the court is required to select the more reasonable interpretation of the statute. *Racine Harley Davidson v. State Division of Hearings & Appeals,* 2006 WI 86, ¶¶ 18–19, 292 Wis. 2d 549, 717 N.W.2d 184.

¶ 80. More rigorous economic and environmental review requirements as well as procedural protections are embodied in the CPCN statute. The following chart summarizes the statutory authority for some of these greater protections:

| RATEPAYER PROTECTIONS | CA Statute | CPCN Statute |
|---|---|---|
| **Wis. Stat. § 196.491(3)(b)** - the PSC **must hold** a public hearing. | **No** | Yes |
| **Wis. Stat. § 196.491(3)(d)3** – the PSC **must find** that the design and location of the facility is in the public interest. | **No** | Yes |
| **Wis. Stat. § 196.491(3)(d)4** - the PSC **must find** that there will not be an undue adverse impact on other environmental values affecting Wisconsin. | **No** | Yes |
| **Wis. Stat. § 196.491(3)(d)5; Wis. Stat. § 196.49(3)(b)3** - the PSC **must find** that the facility will not add to the cost of service without proportionately increasing the value or available quantity of service. | **No** | Yes |
| **Wis. Stat. § 196.491(3)(d)7** - the PSC **must find** that the proposed facility will not have a material adverse impact on competition in the relevant market. | **No** | Yes |
| **Wis. Stat. § 196.491(3)(d)5; Wis. Stat. § 196.49(3)(b)2** - the PSC **must find** that the project will not provide facilities unreasonably in excess of the probable future requirements. | **No** | Yes |
| **Wis. Stat. § 196.491(3)(d)5; Wis. Stat. § 196.49(3)(b)1** - the PSC **must find** that the service efficiency of the public utility is not substantially impaired. | **No** | Yes |
| **Wis. Stat. § 196.491(3)(d)2** - the PSC **must find** that the facility satisfies the reasonable needs of the public for an adequate supply of electric energy. | **No** | Yes |

618

¶ 81. The chart above demonstrates that the CPCN law is a plant siting law that provides greater ratepayer protections than does the CA law.[4]

### III

¶ 82. Having determined that the majority's analysis is unpersuasive, I turn to an examination of the relevant statutes. There are two statutory procedures for regulating the construction of electrical generation facilities, the CA procedure under Wis. Stat. § 196.49 and the CPCN procedure under Wis. Stat. § 196.491. Neither the CA statute nor the CPCN statute explicitly addresses whether it can be applied to a proposed out-of-state facility, the costs of which will be paid by Wisconsin ratepayers.[5]

¶ 83. For purposes of this discussion, there are three significant differences between these procedures. First, it is the size of a proposed electric generating facility that triggers the provisions of the CPCN stat-

---

[4] The majority misconstrues the dissent by setting up a false dichotomy. It asserts that the dissent concludes "that the legislature intended the CPCN law to be a 'ratepayer protection' law, rather than, as this court recently recognized, a 'plant siting law.' " Majority op., ¶ 49 n.15.

In setting up this dichotomy, the majority suggests that the purposes are mutually exclusive. They are not. The legislature did not intend that the purposes be an either-or proposition. Rather, as the chart above illustrates, the legislature intended that the CPCN law is a plant siting law that also provides greater ratepayer protections than does the CA law.

[5] As the circuit court explained, "the statute's silence on the in state/out of state distinction is deafening to this court." And, as the Commission asserted in its interim order, "Both laws are written broadly enough that, on first impression, they appear to regulate both in-state and out-of-state electric utility construction projects."

ute. While the CA statute is implicated by the construction of "any public utility plant, extension or facility," the CPCN statute applies only when a "person" seeks to build a "large" facility which will produce over 100 megawatts of electricity.[6]

¶ 84. Second, the CPCN statute provides more protections for the ratepayers who bear the costs of these larger facilities. Most significantly, the CPCN statute requires the PSC to hold a hearing.[7] Further, the PSC cannot approve the proposal unless it determines that the proposed facility satisfies the reasonable needs of the public and that, when considering economic factors and alternatives, the design of the facility is in the public interest. Wis. Stat. §§ 196.491(3)(d)2, 196.491(3)(d)3.

¶ 85. By contrast, as the chart above demonstrates, the CA statute leaves more to the PSC's discretion.[8] The PSC may, in its discretion, hold a contested

---

[6] *See* Wis. Stat. § 196.491(3)(a) ("no person may commence the construction of a facility . . ."); § 196.491(1)(e) ("In this section: . . . " 'Facility' means a large electric generating facility or a high-voltage transmission line."); § 196.491(1)(g) (" 'Large electric generating facility' means electric generating equipment and associated facilities designed for nominal operation at a capacity of 100 megawatts or more.")

[7] *See* Wis. Stat. § 196.491(3)(b) ("The commission shall hold a public hearing on an application filed under par. (a)1 . . .").

[8] The majority seems to contend that by virtue of administrative regulations related to the CA law, the ratepayer protections offered by the CA law and the CPCN law are essentially identical. *See, e.g.,* majority op., ¶¶ 29–32, 49 (discussing Wis. Admin. Code §§ PSC 112.05–.07). This is not accurate.

It is correct that applicants under the CA law are required to provide detailed applications. Wis. Admin. Code § 112.06(1m). This does not alter the crucial fact that under the CPCN law the PSC must deny an application if it finds, among other things,

case hearing, or it may choose to approve a project without holding a hearing.[9] The PSC has discretion to approve a project even if the facility will substantially impair the efficiency of the service of the public utility. Wis. Stat. § 196.49(3)(b)1. The PSC may approve a project even if the facility is unreasonably in excess of the probable future energy requirements. Wis. Stat. § 196.49(3)(b)2. The PSC may approve the project even if it is not cost effective. Wis. Stat. § 196.49(3)(b)3. Additionally, according to Commissioner Azar who dissented to the PSC's interim order, the PSC may delegate all of these discretionary decisions to a Division Administrator.[10]

that the project will substantially impair the efficiency of the service of the public utility, will provide facilities unreasonably in excess of the probable future requirements, or will add to the cost of service without proportionately increasing the value or available quantity of service. *See* Wis. Stat. § 196.491(3)(d)5.

Under the CA law, on the other hand, the PSC is not so constrained. In fact, under the CA law, the PSC could grant an application even if it found that the project would substantially impair efficiency, provide facilities unreasonably in excess of probable future requirements, and add to the cost of service without proportionally increasing value. Even given those circumstances, under the CA law the PSC has the discretion to approve or disapprove the application. *See* Wis. Stat. § 196.49(3)(b) (providing that the PSC "*may* refuse to certify a project" if it will have the negative effects on ratepayers listed above (emphasis added)).

[9] By way of example, in this very case, one of the three Commissioners voted not to hold a public hearing prior to approving the Bent Tree facility.

[10] Commissioner Lauren Azar's dissent to the PSC's interim order provided the "following hypothetical [as] an example of what the majority decision could lead to':

The Division Administrator could approve the construction of a two billion dollar 600 megawatt (MW) out-of-state coal plant that

¶ 86. Third, in addition to providing greater protections for ratepayers, the CPCN statute also sets forth additional site-specific considerations not included in the CA statute. Many of these considerations, such as scenic beauty and some environmental factors, do not fit comfortably with the Commission's regulation of a facility located in another state.[11]

¶ 87. If the Bent Tree facility were located in Wisconsin, there would be no doubt that it would be subject to the CPCN statute. It is projected to produce 200 megawatts of electricity, double the threshold for invoking the greater ratepayer protections and site-specific considerations of the CPCN. However, the facility is not located within the state's borders.

¶ 88. Although everyone agrees that the CA statute can be applied to an out-of-state facility, the parties disagree about whether the CPCN statute can be applied to an out-of-state facility. As stated above, the answer is not found in the text of the statute.[12]

would be paid for by Wisconsin ratepayers. This would be possible even if that plant: (1) was unnecessary, and/or (2) was not cost effective, and/or (3) would impair the service of the utility. The commission would neither see the application nor the final decision.

Application by Wisconsin Power and Light Company to Construct up to 200 MW of Wind Generation to be Called Bent Tree Wind Farm, in Freeborn County, in South Central Minnesota, No. 6680–CE-173, PSC Interim Order, Nov. 6, 2008 (Commissioner Azar, dissenting, at 1).

[11] Although site-specific factors are not incorporated into the CA statute, the PSC has incorporated many analogous provisions into the administrative rules governing CA approval. Majority op., ¶¶ 29–30. Accordingly, just as some of the statutory site-specific criteria do not fit comfortably with a CPCN application for an out-of-state facility, some of the site-specific criteria found in the CA regulations likewise do not fit comfortably with a CA application for an out-of-state facility.

[12] In her dissent to the PSC's interim order, Commissioner

¶ 89. As I read the CPCN, it appears to reflect a legislative decision that some facilities require more scrutiny from the PSC because they are too big, too expensive, and produce too much electricity to leave it within the PSC's discretion whether to hold a hearing and whether to provide ratepayer protections. In her dissent to the PSC's interim order, Commissioner Azar concluded that application of the CPCN was necessary to protect the ratepayers of Wisconsin. Otherwise, she feared, large out-of-state projects could be certified with minimal scrutiny.

Azar posited that the reason that neither statute explicitly addresses the possibility of out-of-state facilities is because of the historical context in which both statutes were drafted. The CA statute was created in 1931, and the CPCN statute was created in 1975. Commissioner Azar asserted that the legislature would not have considered whether the statute could be applied to out-of-state facilities because building a facility in Minnesota to generate energy for Wisconsin ratepayers was not part of the "old utility world" approach:

> Given the historical context within which the CPCN law was written, it is clear that the Legislature was considering only in-state projects in the law. The CPCN statute was written in 1975 during the "old" utility world, before the Public Utility Regulatory Policies Act, Energy Policy Act of 1992 and Federal Energy Regulatory Commission Order 888—events that have dramatically reshaped the electric industry. Specifically, the CPCN statute was created when utilities were generally expected to build generation within their own service territories. The thought of wheeling power across state lines was unnecessary unless a utility service territory happened to span between neighboring states. Beginning in 1996, the "new" energy world saw the creation of the open access transmission grid, allowing public utilities to begin building generation facilities far away from their service territories, indeed, even in other states because they knew they would have the opportunity to transmit the energy back to their service territory. Hence, it was only after 1996, twenty-one years after the passage of the CPCN law, that the wheeling of power across state lines became common place.

Bent Tree Wind Farm, PSC Interim Order (Commissioner Azar dissenting, at 3–4).

623

¶ 90. According to Commissioner Azar, the PSC has empowered the Division Administrator to make decisions on applications for electric construction orders which do not require a CPCN. She stated that if the CPCN statute is not applicable, "[t]he Division Administrator could approve the construction of a two billion dollar 600 megawatt out-of-state coal plant that would be paid for by Wisconsin ratepayers." The construction could be approved even if the plant was "unnecessary," "was not cost effective," and "would impair the service of the utility." According to Commissioner Azar, the Division Administrator could approve the project without showing the application or the final decision to the PSC.

¶ 91. I share Commissioner Azar's concerns. When Wisconsin ratepayers will fund the costs of large facilities, whether in-state or out-of-state, it is sensible to require a hearing and scrutiny by the commission that is empowered by statute to regulate Wisconsin energy.

¶ 92. I recognize that portions of the CPCN statute are difficult to square with regulation of a facility outside of Wisconsin's borders.[13] The best solution to this problem would be for the legislature to craft a statute that squarely addresses PSC oversight of out-of-state facilities. However, while the PSC waits for the legislature to act, any provision that requires an exercise of extraterritorial jurisdiction could be severed. *See* Wis. Stat. § 990.001(11).

¶ 93. I conclude that the CPCN statute should have been applied to the application for construction of the Bent Tree Wind Farm. While neither statute is perfectly tailored to address the PSC's regulation of an out-of-state facility, I conclude that the protections

---

[13] Likewise, in applying the CA procedure, it may be necessary to sever some site-specific provisions that do not comport well with regulation of out-of-state facilities.

found in the CPCN statute better comport with the legislative policy of protecting Wisconsin ratepayers. Accordingly, I respectfully dissent.

¶ 94. I am authorized to state that CHIEF JUSTICE SHIRLEY S. ABRAHAMSON joins this dissent.